[L. A. No. 14688. In Bank.—October 3, 1934.]

CHARLES W. NICHOLS, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

Schauer, Ryon & Goux and Paul J. Fritz for Petitioner.

Everett W. Mattoon, County Counsel, J. F. Moroney, Deputy County Counsel, and Wilton W. Webster for Respondents.

CURTIS, J.—On April 18, 1931, Ida Mae Nichols instituted an action in the Superior Court of the County of Los Angeles for divorce against Charles W. Nichols, the petitioner herein (*Nichols* v. *Nichols*). For the sake of brevity we will refer to the said Charles W. Nichols as the defendant. In that action she also asked, in addition to a divorce, for a division of the community property and permanent alimony, alimony *pendente lite*, attorneys' fees and costs, for a receiver to take charge of the community property of herself and husband, and for an injunction against certain persons made parties defendant in said action, restraining them from conveying, encumbering, disposing of or transferring or delivering to defendant Charles W. Nichols, or to his agents, any part of said community property in their possession. After setting forth a cause of action upon which she based her prayer for a divorce, plaintiff set forth in her complaint in said action a description of the community property belonging to herself and husband; that it was of great value; that the annual income therefrom was in excess of $10,000; that ever since the separation of herself and husband on July 26, 1930, he "has absented himself from the state of California and is remaining outside of the jurisdiction of the state of California for the purpose of eventually causing the disposition, transfer and liquidation of all of the community property of the parties, located within the state of California, and of obtaining the proceeds thereof, and taking the same beyond the jurisdiction of the courts of this state for the purpose of defrauding plaintiff and preventing her from realizing any part or portion of her community rights"; that the community property consisted of two

candy stores situated in the city of Pasadena, of the esti-mated value of $22,500; of the home of said parties situated in the city of San Marino, near the city of Pasadena, which with its furniture and furnishings was worth not less than $20,000, and a note for $12,000 secured by mortgage upon real property in the city of Glendale, said note and mort-gage having been executed by Volney Ayers Spalding and Effie G. Spalding; and of stocks, bonds, real estate, bills and notes and other assets receivable, the exact nature, character and extent of which were to the plaintiff un-known, but were of great value, and that the reasonable value of said community property was in excess of $100,000. It is further alleged in the complaint that, for the purpose of defrauding the plaintiff, the title to said home place had been taken in the name of First Trust and Savings Bank of Pasadena, and that the title to said real property still stood in the name of said bank; that Volney Ayers and Effie G. Spalding were about to pay off said $12,000 note; that said defendant Charles W. Nichols was attempting to sell said home place and the two candy stores and collect said $12,000 note and obtain the entire proceeds thereof for himself and defraud the plaintiff of her community interest and rights therein, and that unless restrained by the court said Charles W. Nichols would collect the amount of said promissory note and cause said real property to be sold by said bank, and would remove the proceeds derived from the collection of said note and the sale of said real property from the state of California and thereby defraud plaintiff and prevent her from realizing any part or por-tion of her community interest therein. The complaint contains allegations to the effect that plaintiff had no means with which to support herself or to pay attorneys' fees or costs in said action. The prayer of the complaint was, as indicated above, for a divorce from defendant, a division of the community property, permanent alimony, and alimony *pendente lite*, attorneys' fees and costs of suit, for a receiver to take charge of defendant's property, and for an injunction restraining the bank from disposing of said home place, and also restraining the Spaldings from paying to defendant any part or portion of the community property funds or assets, as described in said complaint, until the further order of court. The bank and the Spald-

ings were, for the reason stated above, made parties defendant in said action. On the filing of said complaint, verified by plaintiff, the court made an order to show cause why an order should not be made requiring said Charles W. Nichols to pay to plaintiff alimony during the pendency of said action, attorneys' fees and costs of suit, and also why a receiver should not be appointed to take charge of said community property, and an injunction should not issue as prayed for in said complaint. Said order to show cause was served on the defendants in said action, other than defendant Charles W. Nichols. Said matter came on for hearing on April 27, 1931, at which time it was shown that said order to show cause was not served on defendant Nichols for the reason that the whereabouts of said defendant were unknown. Said defendant Nichols was not present at said hearing either in person or by attorney. On said motion being heard, the court on May 2, 1931, made the following order: (1) For the payment to plaintiff of alimony *pendente lite,* attorneys' fees and costs, and that these amounts be made a charge and lien upon the community property, (2) That a receiver be appointed to take charge and possession of said community property and to pay out of the property in his possession said alimony, attorneys' fees and costs, and (3) an injunction as prayed for in plaintiff's complaint. The order for the payment of alimony, attorneys' fees and costs made no direction that these amounts should be paid by defendant personally, but directed only that they should be a lien against the community property and should be paid by the receiver.

Defendant Nichols was not personally served with summons in said action, nor did he appear in said action prior to the date when said order was made. An order for the publication of summons on said defendant was made on December 10, 1931, and thereafter said summons was published as provided by said order, said publication being completed on February 17, 1932. Thereafter, said defendant appeared in said action and on December 6, 1932, filed his answer and a cross-complaint for divorce against the plaintiff. On May 17, 1933, the defendant Nichols served and filed a notice of motion to vacate and set aside the order of May 2, 1931, allowing plaintiff alimony, attorneys' fees and costs and granting an injunction and appointing

a receiver to take charge of the community property of the parties hereto. Said motion was predicated upon the ground that the order of May 2, 1931, was void for the reason that the court was without authority to allow alimony, attorneys' fees or costs in said action or to appoint a receiver to take charge of defendant's property, as no service of the summons or complaint in said action, or of said order to show cause had been made on defendant prior to the making of said order, nor had defendant at that time made any appearance in said action. This motion was denied by the court, whereupon the defendant Nichols instituted this proceeding before the District Court of Appeal for a writ of mandate or such other writ to which he might be entitled for the purpose of determining the validity of said order of court of May 2, 1931, and of the later order of said court refusing to vacate and set aside the order of May 2, 1931.

Petitioner makes practically the same contention here as he made before the trial court at the hearing of his motion to vacate and set aside said order of May 2, 1931. His contention then and now is that the trial court was without any jurisdiction to make an order for alimony *pendente lite*, attorneys' fees and costs, or for the appointment of a receiver to take charge of defendant's property for the reason that at the time said order was made defendant had not appeared in said action, nor had summons been served on him, nor had any notice been given him of said motion, at the hearing of which the court made its order of May 2, 1931, granting plaintiff alimony, attorneys' fees and costs and appointing such receiver.

The facts as alleged in plaintiff's complaint presented a situation wherein the husband and wife, after accumulating a considerable amount of community property yielding an income sufficient in amount to comfortably maintain each of them, had domestic differences resulting in the disruption of the home, the separation of the parties, and the departure of the husband from the jurisdiction of the courts of the state, after the commission by him of several marital offenses, which would entitle the wife to a legal separation, permanent alimony, a division of the community property, and such incidental relief as the law gives to the wife in actions brought to dissolve the marriage relation and to establish her property rights. It appeared also

from the allegations of the complaint that the husband's departure and continued absence from the state were for the purpose of enabling him the better to resist his wife's efforts to enforce her rights to a divorce, and to obtain a division of the community property, and furthermore from his position of vantage without the state, where he was immune from the process of the courts of this state, he was endeavoring by fraudulent means to dispose of, if not all, at least the greater part of the community property and thus defeat the right of the wife to her interest therein. These facts, together with the further showing that the wife was in indigent circumstances and was without the necessary funds either to provide for herself the necessaries of life, or to prosecute an action against her husband to protect her rights, were before the court at the time the court made the order of May 2, 1931, appointing a receiver to take charge of the community property of the parties and directing him to pay from the proceeds of said property, alimony during the pendency of said action, attorneys' fees and costs. Confronted with the situation indicated by the foregoing statement of facts, did the trial court have jurisdiction to make the order of May 2, 1931? Petitioner, the husband, upon the theory that the court had no jurisdiction to make any order whatever granting his wife temporary relief in said action without notice to him of the hearing at which said order was made, has brought this proceeding to determine the validity of said order of May 2, 1931, and the subsequent order of said court refusing to set aside the order of May 2, 1931.

Petitioner's principal reliance in support of his present petition is upon the cases of *Baker* v. *Baker,* 136 Cal. 302 [68 Pac. 971], and *Chaplin* v. *Superior Court,* 81 Cal. App. 367 [253 Pac. 954]. In the former of these two cases it was held, speaking of the order appealed from that, ''The *ex parte* order was unauthorized and void, as the court had not acquired jurisdiction over the person of the defendant at the time it was made, as there had been no service of process in the action or notice of the application for the order.'' That action was one for divorce and the order involved therein was for temporary alimony, attorneys' fees and costs and the same was made by the trial court before any process had been served on defendant, and without notice of the application for said

order. The facts in that case, however, differ from those in the present action in that the entire property of the defendant therein was his own separate property, it was limited in amount, and in value only slightly exceeded the amount of the alimony and counsel fees ordered by the court to be paid to plaintiff in said order. Furthermore, there was no showing that the defendant was absent from the state at the time said order was made, and could not have been served with notice of said proceeding. In fact, the inference from the statement of facts set out in the opinion is to the contrary. Neither was there any claim that the defendant was acting in fraud of the wife's right to support and maintenance or that he was attempting unjustly or fraudulently to deprive his wife of any of her rights whatever. In fact, in that case, the plaintiff in an ordinary action for divorce, in which she asked for alimony *pendente lite,* counsel fees and costs, was granted an *ex parte* order allowing the same as a personal judgment against the defendant without any showing whatever as to the whereabouts of the defendant or that he was attempting in any way to conceal his property from the plaintiff or that he could not be personally served with notice. We are not inclined to hold that the principle of law enunciated in the opinion in that case covers cases like the instant one, where it is apparent that the defendant had purposely left the jurisdiction of the court and was endeavoring to defraud his wife out of her share of the community property, and the order for alimony, attorneys' fees and costs was simply made a lien on the community property of the parties situated in this state.

The other case relied upon by the petitioner, *Chaplin* v. *Superior Court, supra,* presents a state of facts in many respects similar to those in the instant case. It was decided principally upon the authority of *Baker* v. *Baker, supra.* No petition for a transfer of said cause to this court was ever made, and accordingly no opportunity was given this court to review the decision therein.

The facts in the case of *Murray* v. *Murray,* 115 Cal. 266 [47 Pac. 37, 56 Am. St. Rep. 97, 37 L. R. A. 626], are more like those in the instant case than are those in the case of *Baker* v. *Baker, supra.* In *Murray* v. *Murray,* the wife sued for separate maintenance, while in the present action she seeks maintenance during the pendency of the action, at-

torneys' fees and costs, and also a divorce and a division of community property and permanent alimony. In the Murray case, the wife sought to have a fraudulent conveyance of property by her husband set aside, while in the present action, the wife seeks equitable relief regarding the community property, which she alleges the husband is endeavoring to dispose of and by fraudulent means to deprive her of her rights therein. In each case, a receiver was appointed at the commencement of the action without notice to the husband, who was absent from the state, and substituted service was thereafter obtained upon him by publication. In holding against the contention of the defendant in that case that the trial court had no jurisdiction to appoint a receiver to take charge of defendant's property, this court said: ''By section 140 of the Civil Code, the court in an action such as this, or for divorce, may require the husband to give reasonable security for providing maintenance, and may enforce the same by appointing a receiver. This court has said recently that the only authority for the appointment of a receiver in a divorce suit is to be found in that section (*Petaluma Sav. Bank* v. *Superior Court,* 111 Cal. 488 [44 Pac. 177]) ; if this be true also of an action for maintenance without divorce, it would seem that the language of the section is yet sufficient to justify the appointment of the receiver made in this case at the commencement of the suit. But assuming that the statute does not reach so far, still, in our opinion, the action is by reason of the inadequacy of purely legal remedies so much a subject of equitable cognizance that it carries with it the right to have a receiver appointed under the general provision for such an officer in all cases 'where receivers have been heretofore appointed by the usages of courts of equity.' (Code Civ. Proc., sec. 564.) That the relief sought is within the general powers of a court of equity to grant, and is not dependent upon statute, has been decided by this court, and the principle has found quite general acceptance. (Citing authorities.) 'The wife's claim to alimony is an *equitable demand* against the husband, and there can be no doubt of her right to attack, for fraud, any transfers of property made by him with intent to defeat her claim, and that such fraudulent grantees may properly be made defendants to the suit for alimony.' (*Hinds* v. *Hinds,* 80 Ala. 225.) The wife having such a demand,

and her position being assimilated to that of a creditor of her husband (citing authorities), it would appear that a receiver in aid of the enforcement of the demand should be appointed, when the occasion arises, for reasons like those in which a creditor, seeking to avoid fraudulent conveyances of a debtor, is permitted to employ the same instrumentality. The rule in equity is that a receiver may be appointed before answer, provided the plaintiff can satisfy the court that he has an equitable claim to the property in controversy, and that a receiver is necessary to preserve the same from loss. (Citing authorities.) As shown, the plaintiff here has a demand enforceable in equity, and it may be charged specifically upon the property described in the complaint. (Citing authorities.) It seems necessarily to follow that the court had power to appoint the receiver at the beginning of the action. Of course, such a power should be very cautiously exercised, but there is nothing in the present record to show that the court was indiscreet in that behalf.''

The case of *Murray* v. *Murray* is direct and convincing authority that in an action for separate maintenance, in order to preserve the rights of the wife, the court has the power to appoint a receiver to take charge and possession of the separate property of the husband situated in this state when it appears that the husband is without the state and is endeavoring by fraudulent means to deprive her of her right to support. If the court has such power in an action by the wife against her husband for separate maintenance, we can perceive of no reason why this same power should not be exercised by the court in an action for divorce brought by the wife against her husband in which she seeks not only for permanent maintenance, but for a division of the community property. In fact it seems to us that the reason for the exercise of such power is accentuated in the latter case over that existing in an action for separate maintenance only. In the case of a wife, suing for separate maintenance payable out of the separate property of her husband, the wife stands in the relation merely of a creditor, but where community property is involved, she is seeking to recover her own property. If, therefore, the husband's attempt to fraudulently defeat the wife's claim against his separate property for support and maintenance appeals to a court of equity, how much stronger should this appeal be

when by like fraudulent acts the wife's right to her portion of the community property is in danger of being lost to her. Every equitable consideration favors the application of the same rule in each of the two cases. Besides in the instant case, the plaintiff is asking for permanent support and maintenance, and in that respect her demand is practically the same as was that of the plaintiff in *Murray* v. *Murray, supra.* There is no rational basis for making a distinction between an action in .which separate maintenance is the sole relief asked, and one in which permanent maintenance is asked for in connection with a final decree of divorce.

The further question remains to be answered and that is the jurisdiction of the court to make such an order without previous notice to the defendant. This question was given attention by the court in *Murray* v. *Murray, supra,* and answered in the following manner: "We have dwelt somewhat upon the matter of the receivership because of the influence of that proceeding on the question of the jurisdiction of the court to render any judgment at all. Service of summons by publication, or other form of substituted service of process for notifying an absentee or nonresident defendant of an action against him, is allowed to be effectual 'where, · in connection with process against the person for commencing the action, property within the state is brought under the control of the court, and subjected to its disposition by process adapted to that purpose, or where the judgment is sought as a means of reaching such property, or affecting some interest therein'. (Citing authorities.) Perhaps the jurisdiction in this case is maintainable on the ground that the judgment is sought as a means of affecting an interest in the property described in the complaint; however that may be, we have no doubt that by means of the receiver's possession of the property, and the due publication, etc., of the summons, the court acquired jurisdiction to subject the property seized to the satisfaction of its lawful judgment. According to the common experience of mankind, the owner of property keeps some oversight of it, wherever situated, and will probably be apprised of the seizure thereof and so warned of the purpose of the seizure; to accomplish this object the taking of property into the possession of a receiver is at least as well adapted as the similar taking by process of attachment, and it is common practice

to apply property which has been attached in the course of an action *in personam* against a nonresident to the satisfaction of the judgment obtained, although no personal service of summons has been effected. Attachment is not the only means by which the court may acquire control of the property of the absentee defendant, so as to impress the action, as to such property, with the jurisdictional characteristics of a proceeding *in rem.*"

While this language was used in reference to the jurisdiction of the court to render a final judgment in that case, we think it is equally applicable when considered in reference to the preliminary order made in the instant case. In that case it was held that the action in effect was one *in rem* against the property of the husband within the state and that after sequestering the property by means of the appointment of a receiver, the court acquired jurisdiction to thereafter proceed upon substituted service by publication to subject the property thus seized to the satisfaction of its lawful judgment. If the court had jurisdiction to appoint a receiver and to subject the property in the hands of the receiver to the satisfaction of a final judgment in the action, we see no reason why it should not have the equal right to order payment from the same source of the preliminary expenses and charges of such action. In fact, if the court had jurisdiction to appoint a receiver to preserve the property for the protection of the wife's rights therein, and we think it clear that the court had such power, these preliminary costs and charges and temporary support for the wife were simply incidental to the main purpose of the action which was to establish the wife's right to a divorce, and to a division of the community property. It will be noticed that the order of May 2, 1931, for alimony, attorneys' fees and costs did not require the defendant to pay said amounts personally. The order simply fixed the amounts which should be paid for those purposes, and then directed that these should be paid by the receiver from the proceeds of the community property in his possession and control. It was in all its essential features simply an action *in rem* and as such personal service on the defendant was not required.

Defendant makes the further objection that the power of the court to direct payment of alimony *pendente lite,* attorneys' fees and costs in a divorce action is limited to a

direction to the husband alone to make such payments, and cannot run against any other person, such as in the present case, the receiver. Practically this same question was before the court in the case of *Murray* v. *Murray, supra,* where the court directed the receiver, not only to pay these incidental expenses of the action, but the bill of a physician incurred by the wife. On that subject the court said (page 278): "So far as the facts are disclosed by the record, we see no error in the direction that the receiver pay a physician's bill incurred by the plaintiff; it must be assumed that this was found to be part of the maintenance of plaintiff which was the very purpose for which the funds were in the hands of the receiver." (Citing authorities.) The theory upon which the defendant advances the contention that the court has no authority to direct these preliminary charges to be made by the receiver, or by any other person, is based upon a very technical and strained construction of section 137 of the Civil Code. The contention is, in our opinion, without merit.

Defendant places much reliance upon the case of *Petaluma Savings Bank* v. *Superior Court,* 111 Cal. 488 [44 Pac. 177], which contained a statement to the effect that, "the only authority for the appointment of a receiver in a divorce suit is to be found in section 140 of the Civil Code". This case, as we have seen, was considered by the court in its opinion in *Murray* v. *Murray, supra,* and the court's conclusion as to the effect of that decision upon the power of the court to appoint a receiver in cases of divorce and for separate maintenance is fully set forth in that portion of the opinion hereinbefore quoted. It was there held that the decision in the Petaluma Savings Bank case was not a barrier to the court's power to appoint a receiver in such cases. Section 140 of the Civil Code applies to actions for separate mainte- nance as well as to actions for divorce. If this section of the code, therefore, does not control the power of the court to appoint a receiver in one case, it does not in the other. Such is the only conclusion to be drawn from the decision of this court in the case of *Murray* v. *Murray, supra,* and it completely answers the contention of defendant that the case of *Petaluma Savings Bank* v. *Superior Court, supra,* is a controlling authority upon the power of the court to appoint a receiver under the facts before the trial court at the time it made its order of May 2, 1931.

Our conclusion, therefore, is that under the facts and circumstances existing in the action of *Nichols* v. *Nichols,* the trial court did not exceed its jurisdiction in appointing a receiver to take charge of the community property of the parties to said action, and that the order of May 2, 1931, is valid and binding upon the defendant in so far as it affects his interest in the said community property. These views render it unnecessary to pass upon the other reasons advanced by respondent in support of said order of May 2, 1931.

It is therefore ordered that the alternative writ be discharged, and the petition is denied.

Langdon, J., Shenk, J., Preston, J., Waste, C. J., Seawell, J., and Spence, J., *pro tem.,* concurred.

Rehearing denied.