[Civ. No. 51963. Second Dist., Div. Two. Jan. 19, 1979.]

BRETTON QUAGLINO et al., Minors, etc.
Plaintiffs and Respondents, v.
JOHN P. QUAGLINO, Defendant and Appellant.

## COUNSEL

John P. Quaglino, in pro. per., Zamos & Roberts and Jerome Zamos for Defendant and Appellant.

Hatch & Parent, Gerald B. Parent and Franklyn S. Michaelson for Plaintiffs and Respondents.

## OPINION

**BEACH, J.—** Plaintiffs are the two minor children of defendant John P. Quaglino; they are suing through their guardian ad litem for child support and appointment of a receiver. Defendant was convicted of the murder of plaintiffs' mother and is presently incarcerated on that charge. On March 11, 1977, the trial court ordered a receiver appointed for the property described in exhibit A of the complaint with the exception of two items involving defendant's interest in a partnership. By order filed and entered on April 1, 1977, the trial court decided that the receiver may also take control of those two items. Defendant appeals.[1]

### FACTS:

1. *The trial court had jurisdiction to appoint a receiver.*

Appellant argues that the trial court had no basis to appoint a receiver where there was no order to pay support entered. He further claims that the trial court here has tried to use receivership as the basis to produce evidence to make the order upon which the appointment of a receiver might ultimately stand.

---

[1]There appears to be a tardy appeal from the earlier order. But we treat the appeal as timely and consider the judgment as one finally completed on April 1, 1977. The trial court also found that Jerome Zamos was representing John Quaglino as counsel; that John Quaglino is not indigent; and, not a part of the formal order, that "based upon the representations of counsel, the court does not find as a matter of law that there is a conflict with respect to the law firm of Hatch and Parent representing Plaintiffs."

Civil Code section 4380 provides: "Any judgment, order, or decree of the court made or entered pursuant to this part may be enforced by the court by execution, the *appointment of a receiver,* contempt, or by such other order or orders as the court in its discretion may from time to time deem necessary." (Italics added.)[2] ■ Appellant argues that there must be an order, in this case for child support, before a receiver may be appointed. Section 564 of the Code of Civil Procedure in part applicable here provides:

"In superior courts a receiver may be appointed by the court in which an action or proceeding is pending, or by a judge thereof, in the following cases:

". . . . . . . . . . . . . . . . . .

"7. In all other cases where receivers have heretofore been appointed by the usages of courts of equity." (See 2 Witkin, Cal. Procedure (2d ed.) Provisional Remedies, §§ 245, 237, pp. 1635, 1630, and cases cited therein.)

It is clear that the appointment of a receiver pendente lite is proper. (See *Nichols* v. *Superior Court,* 1 Cal.2d 589, 594 [36 P.2d 380, 95 A.L.R. 894], involving a divorce and spousal support with appointment of a receiver.) The complaint in the case at bench makes out the case of need by the children and ability of the father (appellant) to pay support. The trial court did not feel it had enough information upon which to make a specific order of child support; it desired more information about the needs of the children and the income available for support before making such an order. In the interim to prevent dissipation of appellant's assets that could be used for child support, the trial court acted properly in appointing a receiver even though an order for child support had not been entered. Although not procedurally identical, in other cases, similar preliminary orders of receivership even though anticipatory of further spousal and/or child support orders have heretofore been upheld as proper. (*Murray* v. *Murray,* 115 Cal. 266 [47 P. 37]; *Nichols* v. *Superior Court, supra,* 1 Cal.2d 589; *Guay* v. *Superior Court,* 147 Cal.App.2d 764 [305 P.2d 990].) The record here demonstrates the great probability that the court would soon make an order of support and that the defendant's property was in fact needed as a source to provide payment.

[2]The "part" referred to is the Family Law Act, Civil Code section 4000 et seq.

2. *The trial court did not err in denying a request to have appellant physically present at the hearing at which child support and the receivership were to be determined.*

Penal Code section 2625 provides in part: "In any other action in which a prisoner's parental or marital rights are subject to adjudication, an order for the prisoner's temporary removal from such institution and for the prisoner's production before the court *may* be made by the superior court of the county in which such action is pending, or by a judge thereof. . . ." (Italics added.) ▆ This section is discretionary and does not compel the attendance of a prisoner in a case such as at bench.

In *Payne* v. *Superior Court,* 17 Cal.3d 908, 924 [132 Cal.Rptr. 405, 553 P.2d 565], the California Supreme Court held "that denial of appointed counsel to an indigent prisoner, when no other relief will preserve his right of access to the courts, is constitutionally impermissible." The court stated that the prisoner must have a "meaningful opportunity to be heard" and that "[h]ow that is to be achieved is to be determined by the exercise of discretion by the trial court." (17 Cal.3d at p. 927.)

▆ The trial court in the case at bench found that appellant was not indigent and that, in any event, he was represented by counsel. The only evidence regarding his financial status was introduced by respondents; there was some comment that appellant's parents were loaning him money for his appeals but neither he nor his attorney introduced any evidence thereon. This may be weak rather than substantial evidence of financial ability; nonetheless, there is very substantial evidence of *representation.* As for his representation by counsel, Attorney Jerome Zamos, who was nominally representing appellant's parents before the trial court in this case and in other cases some of which were but prima facie against appellant, was found by the trial court to be "in fact" appellant's attorney. Documents filed by appellant had been sent in an envelope from Zamos' office, and the documents had been typed by secretaries who are employed in that office. Also the court found that the lawsuits by appellant's parents against appellant were "friendly." While this finding does not necessarily mean that the action was collusive, it certainly inferred that the representation of the parents by Zamos was not a true conflict.

▆ We recognize that a lawyer may do work for and help a pro. per. defendant without necessarily becoming the attorney of record or the

attorney in fact for such a pro. per. defendant. ■ However, the case before us is much different. The conduct of the lawyer, Zamos, here went much further than mere help to some unfortunate pro. per. defendant. Our examination of the record clearly discloses efforts by appellant to have the best of two inconsistent worlds: that of technically having no counsel *of record*, but at the same time actually being represented *in fact* by counsel. Appellant's counsel was guilty of trying to blow both hot and cold at the same time. It was a patent effort to create a technical error under the guise of lack of counsel.

The trial court found that as a matter of fact, Attorney Zamos was in fact representing appellant. This is supported by substantial evidence in the record as well as information within the record of which the court took judicial notice. The court described the evidence: the typing, the papers, and the format were precisely the same as that used by Zamos. The place where the documents were typed, by whom they were prepared, and from where they were mailed as shown by the affidavits of service pointed unerringly and uncontradictedly to Zamos' office. The same person, Kathie Ann Reeves, who signed as the person mailing the alleged pro. per. papers was the same one who served Attorney Zamos' papers. The same evidence continues to appear and is present in the papers filed with this reviewing court. It is clear that Attorney Zamos is trying to exalt form over substance in saying that he did not "represent" appellant in the trial court simply because he did not have his name typed in as attorney of record on the documents and pleadings. The appearance of the name of appellant as in pro. per. in the trial court was and is a sham, as it is before this court. Thus the evidence supports the factual finding that not only did Attorney Zamos prepare the pleadings and papers for appellant but personally attended all of the hearings and trials on behalf of appellant, spoke for him, and made motions upon his behalf.

■ The question of representation by counsel does not depend upon mere formality. What is significant is the substance of what is said and done by the lawyer. For example, the mere presence of counsel at a criminal trial is no true full legal representation if because of counsel's failure to know the law and diligently work for his client, the trial is reduced to a farce or a sham. On the other hand the court need not conclude that merely because the attorney does not put his name on the pleading, he is not in truth appearing and representing both physically and legally the alleged pro. per. client. The question of whether an attorney is representing a person is not a technical nicety of law alone but

involves also questions of fact to be determined by the trial court based upon the conduct of counsel and the evidence before it. ■ There was no error in not appointing counsel or in refusing to order appellant's presence under Penal Code section 2625 at the hearing on the receivership. Appellant was represented by an attorney, Mr. Zamos. One of the alternative requirements of *Payne* was met by actual representation.

3. *The trial court acted properly in finding that respondents' attorney was not acting in conflict with the interest of a former client.*

Rule 4-101 of the Rules of Professional Conduct of the State Bar of California provides: "A member of the State Bar shall not accept employment adverse to a client or former client, without the informed and written consent of the client or former client, relating to a matter in reference to which he has obtained confidential information by reason of or in the course of his employment by such client or former client."

■ The primary purpose of this rule is to protect the confidential relationship which exists between attorney and client. (*Jacuzzi* v. *Jacuzzi Bros., Inc.,* 218 Cal.App.2d 24, 28 [32 Cal.Rptr. 188].) An attorney ". . . may not do anything which will injuriously affect his former client in any matter in which he formerly represented him nor may he at any time use against his former client knowledge or information acquired by virtue of the previous relationship. . . ." (*Wutchumna Water Co.* v. *Bailey,* 216 Cal. 564, 573-574 [15 P.2d 505].)

■ Whether or not rule 4-101 of the Rules of Professional Conduct applies to bar a lawyer's appearance in a case of course depends upon the facts of each case. (*DeLong* v. *Miller,* 133 Cal.App.2d 175, 178 [283 P.2d 762].) Mere prior professional association with the former client is not enough.

The complaint in this case is brought on behalf of appellant's children to appoint a receiver for appellant's property. Included within appellant's property is a partnership interest. The purpose of the receivership is to preserve appellant's property from being misused. It is not disputed that Mr. Parent, the attorney for the children, was a member of the law firm which drew up a partnership agreement for appellant and others in 1970. This was Mr. Parent's last professional contact with appellant.

Rule 4-101 of the Rules of Professional Conduct was not violated in the present proceeding. The matter of representing a presently adverse

interest does not necessarily mean that such conduct is doing something which will "injure" the former client.

The minor children as plaintiffs and their father as defendant occupy positions of opposing parties. However, under the circumstances of this case, we do not equate an effort to secure, preserve, protect, and conserve property with which to assure a source to meet the moral and legal duty of a father to support his children as necessarily an "injury" to the father, as that term is used in *Wutchumna Water Co.* v. *Bailey, supra,* 216 Cal. 564. More to the point, however, is the fact the present matter although technically "adverse" to one of a group of former clients, is in reality not a matter in reference to which the attorney had obtained confidential information by reason or in the course of his employment by such former clients. There was not the least showing to that effect.

There is no evidence from oral statements under oath, from any affidavit, from any document, or any other source of evidence that any confidential information was gained or could have been gained by Mr. Parent's firm when it prepared the partnership agreement. Furthermore there is no showing that information, confidential or otherwise, which he could have gained could have been used "against" appellant in this proceeding.

While voluntary recusal by the attorneys might have avoided this issue, the attorneys were not legally required to withdraw from representing the children. There was no violation of any ethics. This representation did not involve any discovery of confidential communication and its use. It is to be noted that formation of the partnership involved others who were apparently represented by the same lawyer in the formation of the partnership. There was no evidence or showing of participation in other matters which required the disqualification of counsel. For example, see and compare the facts in *Cooke* v. *Superior Court,* 83 Cal.App.3d 582 [147 Cal.Rptr. 915], and *Comden* v. *Superior Court,* 20 Cal.3d 906 [145 Cal.Rptr. 9, 576 P.2d 971].

The order is affirmed.

Fleming, Acting P. J., and Compton, J., concurred.