[No. F033586. Fifth Dist. Feb. 15, 2000.]

In re AXSANA S., a Person Coming Under the Juvenile Court Law.
KINGS COUNTY HUMAN SERVICES AGENCY, Plaintiff and
Respondent, v.
ANTHONY D., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 2. and 3. of Discussion.

## COUNSEL

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Denis A. Eymil, County Counsel, and Jeanette Cauble, Deputy County Counsel, for Plaintiff and Respondent.

Patricia M. Belter for Minor.

## OPINION

**THAXTER, J.**—Anthony D. appeals from juvenile court findings and orders denying him reunification services with his three-year-old daughter, Axsana S., pursuant to Welfare and Institutions Code section 361.5, subdivision (a).[1] Appellant was incarcerated throughout the dependency proceedings. At the time the challenged dispositional orders were made, he was being held in the Los Angeles County jail awaiting trial on murder charges. The juvenile court appointed counsel for him and ordered his transportation and appearance in compliance with his request to be present for the proceedings (Pen. Code, § 2625). However, Los Angeles County refused to release

---

[1]Further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

him for transport to attend the hearing. The juvenile court denied counsel's request to continue the proceedings until appellant's criminal case was completed and, in his absence, made the challenged orders.

Appellant contends (1) he was denied due process of law when he was not transported for the dispositional hearing, (2) the court's order denying him reunification services is not supported by substantial evidence and constitutes an abuse of discretion, and (3) the court erred by admitting improper hearsay evidence. We will affirm.

## FACTS

On January 12, 1999, Axsana's mother, Donna S., was forcefully taken to a psychiatric hospital after she was observed acting in a very bizarre manner. Her two children were detained and placed in foster care. On January 14, the Kings County Human Services Agency (Agency) filed a petition alleging that Axsana and her seven-year-old half sister Ra'Issa S.[2] came within the provisions of section 300, subdivisions (b) and (g) because, among other things, their mother, Donna, was diagnosed with a psychiatric disorder which required her to be admitted to a hospital on a section 5150 hold; and appellant had a substance abuse problem which rendered him incapable of caring for Axsana, he had left her without provisions for support, and he was incarcerated. The detention report indicated that appellant had numerous narcotics convictions since 1990. He was currently incarcerated in Kern County on a parole violation.

At the detention hearing on January 19, Donna had been released from the psychiatric hospital because she had refused treatment and was in custody for probation violations. In response to the court's inquiries, she stated that she and appellant had not married. He had stayed with her at her mother's house for about four months before Axsana's birth. They had not lived together after Axsana was born.

The Agency notified appellant of the jurisdictional hearing set for February 13, 1999, and the court ordered him transported from the North Kern State Prison for the hearing. Appellant notified the court that he wished to attend the hearing in person and to be represented by counsel. The hearing was continued until February 26 to allow the applicable parties access to Donna's mental health records. Appellant was notified of the new hearing date and reiterated his request to be present. The court made the necessary orders to secure his appearance.

On February 18, 1999, Donna was arraigned on a second amended petition. That day, appellant notified the court by letter that he was being

---

[2]Ra'Issa is not appellant's child. Her dependency is not at issue in this appeal.

transferred to the Los Angeles County jail. The court appointed legal counsel for him.

The social study report prepared for the jurisdictional hearing detailed appellant's criminal history. Between 1990 and 1998, he was arrested, detained, or cited on 14 occasions for being under the influence of a controlled substance, possession of a syringe, or possession of a controlled substance. Those incidents resulted in four convictions (Health & Saf. Code, §§ 11550, 11377, subd. (a)). Appellant also had one conviction for driving under the influence (Veh. Code, § 23153, subd. (a)), two convictions for receiving stolen property (Pen. Code, § 496), and four arrests for vehicle theft (Veh. Code, § 10851). In addition, on June 30, 1997, he was charged with murder, mayhem, assault with a deadly weapon not a firearm, and corporal injury on a spouse/cohabitant.

At the jurisdictional hearing on February 26, 1999, appellant's counsel was present without appellant. Appellant's mother and sister were present. Appellant's counsel told the court that appellant was scheduled to be released on the parole violation in July 1999, but was being held on new charges in the Los Angeles County jail. The court continued the jurisdictional hearing on the allegations regarding appellant to April 9, 1999. It found the allegations regarding Donna to be true and set the dispositional hearing for the same date. On March 24, 1999, at an interim hearing on matters unrelated to this appeal, appellant's counsel told the court that appellant had telephoned her that day and reported that Los Angeles County was refusing to transport him for the April 9 hearing.

On April 9, 1999, the Agency asked the court to continue the matter because, among other things, Los Angeles County refused to release appellant to attend the dependency proceedings because of a pending hearing in his Los Angeles County case. The court continued the hearing to May 14, 1999, notified appellant of the new date and ordered his appearance at the hearing.

In the social study prepared for the dispositional hearing, the Agency reiterated appellant's criminal history and that he was currently in the Los Angeles County jail awaiting trial on murder charges. The Agency had been unable to interview him because of his incarceration. Donna had told the social worker that appellant was Axsana's father, but he had not lived with, cared for, or supported the child. Donna also said she had left appellant before Axsana's birth because he was physically abusive, drank excessively, and used drugs. She said appellant had seen Axsana only once when she had run into him at a shopping mall.

The social study also reported that on April 19, 1999, appellant wrote the Agency stating he would like to reunify with Axsana. He was attending a substance abuse education program at the county jail and reading books on parenting. The Agency had not arranged visits between Axsana and appellant because of his "being in and out to Court regarding his murder charges in Los Angeles County."

The Agency recommended reunification services for Donna, but not for appellant. The Agency concluded that reunification services for appellant would not be in Axsana's best interests due to appellant's history of drug abuse, his minimal contact and failure to establish a parental relationship with her, and his current incarceration and pending murder charges. In addition, Axsana and Ra'Issa were very attached to each other and separating them would be emotionally detrimental to them.

Appellant was not present at the continued jurisdictional/dispositional hearing on May 14, 1999. The court noted that Los Angeles had not honored the order that he be present for the dependency hearing. Apparently, Los Angeles County would not release him to attend the dependency proceedings until his pending charges were resolved. His criminal trial had been continued to July 1, 1999. The court denied appellant's counsel's request to continue the jurisdictional hearing until appellant could be present. The court noted appellant's counsel was present, which was sufficient under Penal Code section 2625. Counsel submitted on the jurisdictional allegation that appellant's drug use rendered him incapable of caring for Axsana, and the Agency dismissed the failure to provide for allegation. The court found the allegation true.

Appellant's counsel requested the dispositional hearing be continued so appellant could present evidence on his own behalf. The other parties urged the court not to continue the hearing again. They argued that the children's interests in having their case decided in a timely manner outweighed appellant's interest in being present for the hearing; his attorney could represent his interests in the proceeding. The court denied appellant's request to continue, citing *In re Rikki D.* (1991) 227 Cal.App.3d 1624 [278 Cal.Rptr. 565].

Appellant's counsel called and examined Kristi Bourque, the Agency social worker who had corresponded with appellant, and Eliseo Gonzalez, the social worker who had prepared the jurisdictional and dispositional reports. Ms. Bourque testified she had not interviewed appellant but had received his letter of April 19 in which he reported he was attending drug education classes and attempting to improve his parenting skills. On cross-examination, she testified that Axsana's birth certificate listed her father as

"unknown," and Donna had told her that appellant had seen Axsana only once in passing when Axsana was a baby. Ms. Bourque also testified that when appellant's letter to Axsana was read to the child, Axsana had asked who appellant was. Ms. Bourque did not believe that reunification services for appellant would benefit Axsana because she had no relationship with him, and he was incarcerated and facing murder charges.

Mr. Gonzalez testified that the Agency recommended that appellant not receive reunification services. The recommendation was based on the Agency's conclusions that he was an alleged father and Axsana would not benefit if he received services. That conclusion was based on his substance abuse history, his failure to establish a parental relationship with her, his having seen her only once, and his incarceration. In addition, Axsana did not know who he was.

Appellant's counsel opted not to call Donna as a witness. Instead, counsel urged the court to order reunification services for appellant, pointing out his participation in a substance abuse program and attempts to improve his parenting skills. When asked to address appellant's minimal contact with Axsana, counsel responded: "if [appellant] were present, he can testify to the times he has visited the child or attempted to visit. . . . [B]ut [he] is not here to testify, so I don't have that evidence to present to the Court."

At the conclusion of the hearing, the court found in pertinent part that appellant was an alleged father and reunification services for him would not benefit Axsana within the meaning of section 361.5, subdivision (a). Contrary to appellant's representation, the court did not make any findings pursuant to section 361.5, subdivision (e)(1).

### DISCUSSION

1. *Failure to transport appellant for the dispositional hearing was not a denial of due process of law.*

Appellant contends the judgment must be reversed because he was deprived of due process when the court conducted the dispositional hearing in his absence, notwithstanding the presence of his appointed counsel. He argues he was denied an opportunity to be heard because, under the facts of this case, his testimony was necessary to refute "various allegations." Appellant has not shown a due process violation.

Appellant relies on the rule that a prisoner/defendant in a civil action threatening his personal interests has a constitutional due process right to

meaningful access to the courts in order to present a defense. (*Yarbrough v. Superior Court* (1985) 39 Cal.3d 197, 203-207 [216 Cal.Rptr. 425, 702 P.2d 583]; *Payne v. Superior Court* (1976) 17 Cal.3d 908, 913-919, 924 [132 Cal.Rptr. 405, 553 P.2d 565].) Remedies to secure meaningful access include deferral of the action until the prisoner is released, transfer of the prisoner to court, utilization of depositions in lieu of personal appearances, and appointment of counsel for the prisoner. (*Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 792-793 [39 Cal.Rptr.2d 47].) A prisoner does not have a due process right to any particular remedy. (*Id.* at p. 793; *Payne v. Superior Court, supra*, at p. 923.)

Here, appellant received meaningful access to the courts through his appointed counsel. In dependency cases, as in other civil cases, personal appearance by a party is not essential; appearance by an attorney is sufficient and equally effective. (*In re Dolly D.* (1995) 41 Cal.App.4th 440, 444 [48 Cal.Rptr.2d 691]; *Cohen v. Hughes Markets, Inc.* (1995) 36 Cal.App.4th 1693, 1700 [43 Cal.Rptr.2d 66]; *Quaglino v. Quaglino* (1979) 88 Cal.App.3d 542, 549 [152 Cal.Rptr. 47] [prisoner must have a meaningful opportunity to be heard, and if he is not present in person, he is entitled to be represented by counsel].) Appellant received the due process to which he was entitled as an incarcerated litigant under the *Payne* and *Yarbrough* decisions.

Appellant also relies on the line of cases which hold that parental rights cannot be terminated without due process. Because parents enjoy a fundamental liberty interest in the care, custody and control of their children, a parent must be afforded adequate notice and a meaningful opportunity to be heard before being deprived of his parental interest. (*In re B. G.* (1974) 11 Cal.3d 679, 688-689 [114 Cal.Rptr. 444, 523 P.2d 244]; *Santosky v. Kramer* (1982) 455 U.S. 745, 758-759 [102 S.Ct. 1388, 1397-1398, 71 L.Ed.2d 599]; *Mathews v. Eldridge* (1976) 424 U.S. 319, 349 [96 S.Ct. 893, 909-910, 47 L.Ed.2d 18]; *Tyler v. Children's Home Society* (1994) 29 Cal.App.4th 511, 545 [35 Cal.Rptr.2d 291].) Case law, statutory law and court rule set forth the procedural due process protections to which a parent is entitled when his or her parental rights are at issue. Appellant was entitled to actual notice of the pending proceedings and an opportunity to be heard. (Pen. Code, § 2625; *In re B. G., supra*, at pp. 688-689.) He was also entitled to be represented by appointed counsel, to receive a copy of the social worker's report on which the court would rely in coming to a decision, and to an opportunity to cross-examine witnesses. (§ 317, subd. (b); Cal. Rules of Court, rule 1412(h)(1)(B); *In re Matthew P.* (1999) 71 Cal.App.4th 841, 851 [84 Cal.Rptr.2d 269]; *In re Arturo A.* (1992) 8 Cal.App.4th 229, 238 [10 Cal.Rptr.2d 131]; *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1660 [54 Cal.Rptr.2d 722].)

In this case, appellant was notified of the proceedings. He was represented by appointed counsel, who participated in the hearings on his behalf. His counsel received the social worker's reports and cross-examined the individual who prepared them regarding their contents at the jurisdictional/dispositional hearing. Notwithstanding this "opportunity to be heard," appellant argues his counsel could not provide the testimony needed to protect his parental rights. Such evidence could come only from him.

Appellant's argument ignores the alternative means available to him to present evidence of his parental status and entitlement to reunification services to the court through his counsel. For example, he could have presented evidence of his involvement in Axsana's life, if any, in written form. The court had already considered correspondence from him by way of attachments to the dispositional report. In addition, Axsana's mother, Donna, and two paternal relatives were present at the hearing and could have been called to testify regarding appellant's parental status and relationship with Axsana. Appellant did not avail himself of any of these alternative methods of presenting his case in his physical absence. Accordingly, he has failed to show that his due process rights were violated despite the fact that he was represented by counsel at the hearing.

Appellant has cited no case law providing incarcerated parents a due process right to be present at dependency proceedings involving their children. Several cases, by implication, recognize there is no due process right to personally appear. In *In re Maria S.* (1997) 60 Cal.App.4th 1309, 1312 [71 Cal.Rptr.2d 30], the child's father was incarcerated in a federal detention center awaiting deportation. The Immigration and Naturalization Service refused to transport him to attend dependency hearings involving his child for fear he would escape. The court held that the absence of a procedure analogous to Penal Code section 2625 that would enable out-of-state or federal prisoners to attend dependency proceedings did not require the juvenile court to suspend the proceedings pending the father's release from federal custody. (Accord, *In re Gary U.* (1982) 136 Cal.App.3d 494, 497 [186 Cal.Rptr. 316] [Arizona prisoner had no absolute right to be present at judicial proceedings to sever his parental rights].)

Granted, under Penal Code section 2625 appellant had a statutory right to be present at the hearings. (*Payne v. Superior Court, supra,* 17 Cal.3d at p. 920.) Subdivision (d) of that section provides: "Upon receipt by the court of a statement from the prisoner . . . indicating the prisoner's desire to be present during the court's proceedings, the court *shall issue* an order for the temporary removal of the prisoner from the institution, and for the prisoner's production before the court. . . . [*N*]*o petition to adjudge the child of a*

*prisoner a dependent child of the court pursuant to subdivision . . . (b) . . . of Section 300 of the Welfare and Institutions Code may be adjudicated without the physical presence of the prisoner or the prisoner's attorney . . . ."* (Pen. Code, § 2625, italics added.)

However, a statutory right to be present at dependency hearings does not equate with a due process violation for failure to facilitate appellant's appearance. "Constitutionally mandated requirements of procedural due process are found in the constitution, as interpreted by the courts, and not in state statutes." (*Tyler v. Children's Home Society, supra,* 29 Cal.App.4th at p. 546.) Appellant has not directed this court to any authority, and we have found none, which recognizes a due process right to personally attend the section 300 hearings. Because appellant had appointed counsel present to represent his interests at the jurisdictional/dispositional hearing, he was afforded the requisite due process right of a parent to be heard.

Appellant contends the court's reliance on *In re Rikki D., supra,* 227 Cal.App.3d 1624 was misplaced. In *Rikki D.,* the court complied with Penal Code section 2625 and appointed counsel for the incarcerated father. However, the father refused transportation to the hearing to free his child from his custody and control. The court decided the matter in his absence. (227 Cal.App.3d at pp. 1627-1628.) On appeal he argued that the court exceeded its jurisdiction when it proceeded without him, even though his attorney was present and represented him. The court disagreed; once the prisoner received notice and the opportunity to be present, Penal Code section 2625 did not bar the court from proceeding in his absence provided his attorney was present. (*In re Rikki D., supra,* at p. 1629.)

*Rikki D.* is factually distinguishable from appellant's case because Rikki D.'s father chose not to attend the hearing whereas appellant was not released from jail to attend. However, the legal holding—that Penal Code section 2625 does not expressly require the physical presence of the incarcerated parent at the critical hearings, but recognizes that the appearance of the parent's attorney is sufficient—applies in both situations.

Appellant next argues the juvenile court was required to issue an order to show cause stemming from Los Angeles County's failure to comply with the court's order to transport him for the hearing. However, appellant did not request such relief in the trial court. The juvenile court cannot be faulted for failing to order relief that was never requested.

Finally, appellant argues the court should have ordered a "reasonable" continuance of the dispositional hearing as to him. He submits the matter

could have been continued while the court used judicial process to compel Los Angeles to release him for transport to the dependency hearing or until his counsel could consult with him regarding how to present his testimony in his absence. He relies on *In re Julian L.* (1998) 67 Cal.App.4th 204 [78 Cal.Rptr.2d 839]. There the juvenile court refused to grant a continuance when new counsel, who had been assigned to the case for only one week, informed the court that he had not had an opportunity to ascertain the mother's wishes in regard to the section 366.26 hearing. (67 Cal.App.4th at p. 207.) The appellate court reversed; a brief continuance was compelled to afford counsel an opportunity to ascertain the mother's wishes and to effectively represent her. (*Id.* at p. 208.)

*Julian L.* is distinguishable from this case. There, the mother's unprepared, recently appointed counsel asked for a brief continuance to ascertain her wishes in the matter. In this case, the matter had been continued from February 26 to April 9 to May 14, 1999, to provide appellant an opportunity to appear at the hearing. In addition, appellant and his counsel were aware as of March 24 that Los Angeles County was refusing to release him to attend the dependency proceedings. Moreover, on May 14, appellant's counsel did not say she was unprepared or request a short continuance to confer with him. She asked the court to continue the matter until the criminal proceedings were completed. Since appellant's criminal trial was not scheduled to commence until July 1, the requested continuance would have delayed the matter several months.

The juvenile dependency statutory scheme requires that petitions under section 300 be heard, and decided rapidly. (*Jeff M. v. Superior Court* (1997) 56 Cal.App.4th 1238, 1241 [66 Cal.Rptr.2d 343].) Continuances are discouraged. (*Id.* at p. 1242.) Section 352 contains a number of limitations on the juvenile court's power to continue dependency proceedings. Under subdivision (a), the court may not grant a continuance that is contrary to the child's best interests. A pending criminal prosecution is not considered, in and of itself, good cause for a continuance. Subdivision (b) of section 352 contains two specific restrictions on the juvenile court's discretion to grant continuances. First, if the child is detained, the court cannot grant a continuance that would result in the dispositional hearing being completed more than 60 days after the detention hearing, absent exceptional circumstances requiring such a continuance. Second, the court may not, under any circumstances, grant continuances that would cause the dispositional hearing to be completed more than six months after the detention hearing.

In this case, Axsana was ordered detained on January 19, 1999. The challenged dispositional hearing occurred more than 60 days and almost four

months later on May 14, 1999. Appellant failed to show that his *continued* absence on May 14 because of the pending Los Angeles County criminal proceedings constituted "exceptional circumstances" within the meaning of section 352, subdivision (b). Moreover, appellant's murder trial was not scheduled to begin until July 1, 1999, five and a half months after Axsana was detained. In all probability, the juvenile court could not grant appellant's request to continue the matter until the completion of his criminal proceedings without violating section 352, subdivision (b). Thus, the juvenile court did not violate appellant's due process rights or abuse its discretion in refusing to grant yet another continuance which potentially would have violated section 352, subdivision (b).

2., 3.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The minutes of the May 14, 1999, hearing, filed June 1, 1999, shall be corrected to reflect that the court did not find that reunification services to appellant would be detrimental to the minor under section 361.5, subdivision (e). As corrected, the dispositional findings and orders are affirmed.

Dibiaso, Acting P. J., and Harris, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 10, 2000. Mosk, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 262.