[Civ. No. 10482.   Third Dist.   May 28, 1963.]

DORIS CARMICHAEL, Plaintiff and Respondent, v. FRANK CARMICHAEL, Defendant and Appellant.

Bradford, Cross, Dahl & Hefner, Rogers, Clark & Jordan, Lawrence W. Jordan, Jr., Ted W. Isles and John H. Laugenour for Defendant and Appellant.

Steel & Arostegui and John R. Hetland for Plaintiff and Respondent.

SCHOTTKY, J.—Frank Carmichael has appealed from an interlocutory decree of divorce granted his wife, Doris Carmichael, for extreme cruelty.

No attack is made on the sufficiency of the evidence to sustain the finding of extreme cruelty so it is unnecessary to set forth the evidence relating to that issue.

The first major contention of appellant is that the trial court failed to give full faith and credit to a decree of divorce granted Frank in Nevada on October 25, 1960. The evidence shows that around the middle of August 1960 Frank left his marital residence in California and ostensibly went to Nevada where he allegedly established residence.

On September 7, 1960, Doris filed an action for divorce in California. Frank was served the same day. In his answer filed on October 18, 1960, Frank alleged he was a resident of Washoe County, Nevada, and also that an action for divorce was pending in Nevada. (This action was apparently filed on September 29, 1960.) Frank received an ex parte divorce on October 25, 1960. Doris was served in California but did not appear in the Nevada action. At the trial Frank introduced a copy of the Nevada decree in evidence. He testified that he went to Nevada in August 1960 to establish a permanent residence and that at the time of the trial (May 1961) he was still a Nevada resident and that he lived at 20 Fairview Avenue, Reno. But he also testified that he was in Portola, California, almost every day during September and October and that occasionally he remained in California overnight but never over a 24-hour period.

Frank testified that when he first went to Reno in August he lived on University Terrace, a street in Reno. He could not remember the street number of the apartment building, or the name of the apartment building, or the number of the apartment in which he resided. He paid his rent in cash and had no record of the name of the person to whom the rent was paid.

His next residence, and according to his testimony his residence at the time of the trial, was at 20 Fairview Avenue, Reno. This he contended had been his abode since October 25, 1960. He testified that he rented the single family residence from Nick Jackson, the owner, who was a friend of his. Nick Jackson testified that he had lived at 20 Fairview

Avenue for over two years with his wife and two children. Jackson testified that he had never rented the house to Frank and that neither Frank nor his second wife ever slept in the house.

Mr. Jackson also testified that pursuant to a request he permitted Frank and his second wife to use his address as their mailing address. He forwarded all their mail to their home in Clio, California, as instructed.

The trial court properly refused to give full faith and credit to the Nevada decree. In order that the decree in Nevada may be entitled to full faith and credit, it must appear that Frank was domiciled in Nevada, or that Doris participated in the Nevada action. A decree is not entitled to full faith and credit where neither party had a domicile in the divorce state (*Cook* v. *Cook*, 342 U.S. 126 [72 S.Ct. 157, 96 L.Ed. 146]; *Crouch* v. *Crouch*, 28 Cal.2d 243 [169 P.2d 897]), and the attacking party was not served within the jurisdiction and did not appear in the action. (*Williams* v. *State of North Carolina*, 325 U.S. 226 [65 S.Ct. 1092, 89 L.Ed. 1577, 157 A.L.R. 1366]; *Cook* v. *Cook, supra.*)

There can be no doubt that the California court had the right to examine the question of appellant's domicile in Nevada. There is also no question that the evidence supports a determination that appellant was never domiciled in Nevada. These points are really conceded, but appellant asserts that respondent relied entirely on section 150.2 of the Civil Code to prove her contention, and he contends that section is invalid. Section 150.2 provides:

"Proof that a person hereafter obtaining a divorce from the bonds of matrimony in another jurisdiction was (a) domiciled in this State within twelve months prior to the commencement of the proceeding therefor, and resumed residence in this State within eighteen months after the date of his departure therefrom, or (b) at all times after his departure from this State and until his return maintained a place of residence within this State, shall be prima facie evidence that the person was domiciled in this State when the divorce proceeding was commenced."

California also provides in section 150.4 of the Civil Code: "The application of this article is limited by the requirement of the Constitution of the United States that full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state."

There are several answers to this contention of appellant.

In the first place, it was not necessary for respondent to rely on section 150.2 to prove that appellant was domiciled in California as there was ample other evidence, as hereinbefore set forth, to prove the court's determination that he was. And it is clear from the record that respondent did not rely on the statute alone. Evidence was adduced to show that appellant never had a domicile in Nevada and therefore the decree was subject to attack. (*Crouch* v. *Crouch, supra.*)

Secondly, it is unnecessary to discuss the question of whether or not said section is unconstitutional because the evidence that appellant was not a Nevada domiciliary was overwhelming, and so far as the case at bench is concerned it is immaterial whether or not the section is unconstitutional.

█ Appellant also contends that the court erred in not finding on the validity of the Nevada decree. No direct finding was made nor was a specific finding requested. Impliedly, however, the trial court found the Nevada decree invalid because it granted Doris a divorce.

█ The objection made by appellant was the "Defendant objects generally to the proposed Amended Findings of Fact in that said proposed Amended Findings of Fact in no way whatsoever make any finding with reference to the defendant's Answer to the Complaint on file herein." This is hardly a request for a specific finding as required by section 634 of the Code of Civil Procedure, and therefore an adverse finding may be implied.

█ As stated in *Richter* v. *Walker,* 36 Cal.2d 634, 640 [226 P.2d 593]: "[W]hile full findings are required upon all material issues a judgment will not be set aside on appeal because of a failure to make an express finding upon an issue if a finding thereon, consistent with the judgment, results by necessary implication from the express findings which are made. . . ."

█ Furthermore, it is apparent from the record that the only finding that could have been made as to the validity of the Nevada decree would have been that it was invalid. It is apparent that such was the view of the trial court, as the memorandum of decision of the trial court states that "The evidence clearly establishes the jurisdiction of this court over the subject of this action as well as plaintiff's right to the divorce." Therefore under the power given to this court by section 956a of the Code of Civil Procedure, and to remove any possible doubt in the matter, we hereby order that the findings be amended by adding thereto a finding that the

Nevada decree of divorce obtained by appellant is invalid.

■ Appellant next contends that the court erred in awarding as community property "that which had become tenancy in common property by reason of the Nevada decree of divorce." The fallacy of this contention is that it is based on the erroneous premise that the Nevada decree is valid.

■ Furthermore, while in a divorce action in a foreign state upon constructive service the court there has authority to adjudicate status of a person residing in that state, it does not have authority to adjudicate vested property rights of the absent spouse who does not reside in such state, who does not appear in such action or is not served within such state. (*Hudson* v. *Hudson*, 52 Cal.2d 735, 742 [344 P.2d 295].) The wife has a present interest in the community property. (Civ. Code, § 161a.)

■ Appellant contends also that the court erred in disposing of specific items of partnership property. As pointed out by appellant the cattle business and the equipment thereof was property of a partnership in which Francis Carmichael, a son of the parties, owned a half interest. Francis Carmichael was not made a party to the action and did not participate therein. Appellant argues that "by awarding all of the ranch equipment on the various ranches to either Doris or Frank the Court obviously disposed of specific items of partnership property."

There is no merit in this contention. If appellant believed Francis had an interest that would be affected, he could have made Francis a party to the action. Furthermore, Francis not being a party to the action no binding adjudication could be made as to his rights in the property. What was said in *Melny* v. *Melny*, 90 Cal.App.2d 672 [203 P.2d 588], at page 676 is apposite:

"The obvious answer to this contention, and it is one heretofore expressed by the courts, is that the judgment of the trial court, when and if it becomes final, is a binding adjudication only as to the rights of appellant and respondent in the property, and in no way affects the rights of Harry, if any, in the property. Of course, the trial court could make no adjudication that would be binding on Harry without making him a party to the proceeding. (*Towne* v. *Towne*, 6 Cal. App. 697 [92 P. 1050]; *Moffitt* v. *Moffitt*, 128 Cal.App. 676 [18 P.2d 387].) It would have been much better practice for either the appellant or respondent, or the trial court, to have brought in Harry Melny as a party, and all rights in the

property could then have been adjudicated. [Citations.] But Harry was not an indispensable party. The complaint alleged, and the answer denied that the property in question was community. The trial court had jurisdiction as between the husband and wife to adjudge the character of any property claimed to be community. (*Scarpa* v. *Scarpa*, 40 Cal. App. 345 [180 P. 637].) The fact that a third party claimed an interest in the property is a false factor. (*Hiltscher* v. *Wagner*, 96 Cal.App. 66 [273 P. 590].) It is true that appellant may be adversely affected by the decree if it should ultimately be held in an action between appellant and his son that his son is the owner of the property, because the value of the Novato property was considered in dividing the community property and undoubtedly the value of this property influenced the court in determining the appellant's ability to pay alimony. But appellant has no one but himself to blame. He had it within his power to join his son as a party, but elected not to do so. He cannot now be heard to complain. (*Long* v. *Long*, 88 Cal.App.2d 544 [199 P.2d 47].)''

Appellant contends also that the court erred in making an award of partnership property without an accounting. The court found:

''The parties own as community property of their marriage an undivided one-half interest in a partnership for the production and sale of livestock, principally cattle. The son of the parties, Francis Carmichael, is the remaining partner, and has a one-half interest in said partnership. Said partnership and each of its partners individually, is indebted to American Trust Company-Wells Fargo Bank in the principal sum of $450,000.00, and in the additional sum of approximately $12,000.00 on account of interest. Said partnership owns assets, principally livestock and equipment used in connection therewith, the value of which is in excess of $850,-000.00. That liquidation of said partnership interest will require considerable time and could not be accomplished without continued stress and unhappiness to plaintiff; that in lieu of assigning the whole of said community interest in said partnership to plaintiff it is fair and equitable to assign the whole thereof to defendant conditioned upon payment to plaintiff of the sum of $125,000.00 payable in installments and secured as hereinbelow set forth and upon the further condition that defendant indemnifies and holds plaintiff harmless from any partnership liability, present or future; . . .''

This finding is fully sustained by the evidence and particu-

larly by the last financial statement of the partnership prior to the filing of the instant action. In lieu of awarding respondent an interest in the partnership, the court awarded her the sum of $125,000 for the following reasons stated in the court's memorandum opinion:

". . . The problems concerning liquidation of the partnership and the third party rights of the son as the owner of a one-half interest therein therefore involves only the cattle and the rights to continued use of the real property in whatsoever manner it is allocated for the reasonable period required to liquidate the partnership. Because of the complexities of this problem this court is of the opinion that in lieu of allocation in kind of the wife's interest in the partnership assets (cash and cattle) it is fairer and more expedient for all parties concerned to allocate the partnership interests to the husband and to award the wife the sum of $125,000 in lieu thereof. It should be explained that this figure is predicated upon evaluations supplied by the defendant representing a one-fourth interest in the cattle but substantially reduced to meet costs that would accrue if liquidation was presently ordered. . . ."

We believe that a wife should be able to receive as community property a sum representing a portion of her husband's partnership interest without an accounting. ▮▮▮ A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property. (Corp. Code, § 15026.) ▮▮▮ A partner's interest is subject to a charging order. (*Baum* v. *Baum,* 51 Cal.2d 610 [335 P.2d 481].) ▮▮▮ Both of the cases on which appellant relies state that a partner's interest is a mere expectancy. (*Hill* v. *Hill,* 82 Cal. App.2d 682 [187 P.2d 28]; *Speer* v. *Speer,* 209 Cal.App.2d 233 [25 Cal.Rptr. 729].) The latter term has been defined as a "chance, a mere hope, unfounded in any limitation, provision, trust, or legal act whatever; . . . [I]t is no right at all, in contemplation of law, . . .; because . . . nothing has been done to create an obligation in any event; and where there is no obligation, there can be no right; . . ." (Ballentine's Law Dictionary (2d ed. 1948).) ▮▮▮ But an interest in a partnership is not a mere expectancy. It is personal property. It is a present interest. ▮▮▮ In *Baum* v. *Baum, supra,* an order making payments for support (under Civ. Code, § 139) of a divorced wife a lien on the property, an interest in a partnership of the husband, was recognized as proper.

We believe that the trial court in the case at bench made a just and practicable determination that the best way to divide the interests of appellant and respondent in the partnership was to award a cash sum to respondent ånd permit appellant to keep the interest of respondent and himself in the partnership cattle business. We believe further from a careful study of the record that this division was perhaps more fair to appellant than to respondent. So as far as an accounting was concerned, we do not believe that one was necessary as there was sufficient evidence before the court to enable it to evaluate the partnership interest. Furthermore, it is apparent that at the trial the then counsel for appellant (not his present counsel) did not seek any further accounting as the following appears in the record:

"MR. MANWELL: If the court please, Francis Carmichael makes no claim to the moneys that were used out of the partnership funds on the other properties. In other words there is going to be no conflict here I don't believe between the partners. Francis owns certain ranches and owns a certain interest in the livestock. He is not making any claim on any of the other properties. I can speak because that is what he has told me, he makes no claim on any of the other property, so there will be no necessity of any accounting."

Appellant contends further that the court erred in making an absolute disposition of community property on entry of the interlocutory decree not conditional on the entry of the final decree of divorce. Respondent concedes the correctness of this contention and points out that this court in denying a petition for supersedeas by appellant stated:

"[T]hat the clear implication of the decree is that plaintiff should have immediate occupancy of the property in question. While her title to the property would not be complete until the decree became final and would be defeated by death or reconciliation during the interlocutory period, we hold that reason, common sense and authority entitle her in the meantime to the right to possession of the property awarded to her. . . ." (*Carmichael* v. *Carmichael*, 198 Cal.App.2d 304 [17 Cal.Rptr. 558].)

" '. . . It would appear that a proper solution of this problem would be to hold that the interlocutory may make a present disposition of the community property, but that the title thus conveyed is limited and conditional until the entry of the final decree, , , , In the present case it was, of course,

proper for the trial court to determine in its interlocutory the status of the property and how it ought to be assigned upon the entering of the final decree.' In the present case justice will be best served by amending the decree so as to provide that the disposition of the property and the judgment relating thereto shall become effective upon the entry of the final decree." (*Dallman* v. *Dallman*, 164 Cal.App.2d 815, 820 [331 P.2d 245].)

Appellant's final contention is that the trial court abused its discretion in its award of the community property to the respective parties and that respondent wife was awarded a disproportionate share. Appellant strongly urges a revision of the award by this court under section 148 of the Civil Code which reads: "The disposition of the community property, of the quasi-community property and of the homestead, as above provided, is subject to revision on appeal in all particulars, including those which are stated to be in the discretion of the court."

Appellant argues that "Doris was given easily twice as much property as Frank" and has made a chart which appears to show that appellant received about $394,000 and respondent about $600,000. Respondent disputes the accuracy of appellant's figures and argues that in fact the record shows that appellant received property of the value of more than $735,-000, while respondent received property of the value of approximately $725,000. We are not disposed to attempt to analyze the figures and calculations of respective counsel because a careful study of the record convinces us that the disposition the court made of the community property was more than fair to appellant. And even if appellant's figures were correct, we would still hold that we would not be disposed to revise the disposition of the property made by the trial court. For it must be borne in mind that respondent was granted a divorce upon the ground of extreme cruelty and that the record abundantly shows that said cruelty was of an aggravated nature. As stated by this court in *Harrold* v. *Harrold*, 100 Cal.App.2d 601 [224 P.2d 66], at page 608:

". . . Where a divorce is granted on the ground of extreme cruelty, as here, the nonoffending party is entitled to be awarded more than one-half of the community property. (*Faust* v. *Faust*, 91 Cal.App.2d 304 [204 P.2d 906]; *Arnold* v. *Arnold*, 76 Cal.App.2d 877 [174 P.2d 674], and cases therein cited.) Section 146, subdivision 1, of the Civil Code, pro-

vides that where the divorce is granted on the ground of adultery, incurable insanity, or extreme cruelty, the community property shall be assigned 'in such proportions as the court, from all the facts of the case, and the condition of the parties, may deem just.' In all other cases the community property must be divided equally between the parties. (Civ. Code, § 146, subd. 1.) The inference derived from this code section is that the nonoffending party is entitled to more than one-half of the community property where the divorce is granted on the ground of extreme cruelty. (*Tipton* v. *Tipton,* 209 Cal. 443 [288 P. 65]; *Crouch* v. *Crouch,* 63 Cal.App. 2d 747 [147 P.2d 678]; *Quagelli* v. *Quagelli,* 99 Cal.App. 172 [277 P. 1089].)''

The interlocutory decree is modified by striking therefrom all words presently disposing of the community property and inserting words to the effect that the final decree shall assign to the parties the portions of the community property mentioned in the interlocutory decree. As so modified the judgment is affirmed. Respondent will recover her costs upon this appeal.

Pierce, P. J., and Friedman, J., concurred.

A petition for a rehearing was denied June 26, 1963, and appellant's petition for a hearing by the Supreme Court was denied July 24, 1963.