[Civ. Nos. 28162, 28348.    Second Dist., Div. Two.    Mar. 21, 1966.]

RUTH B. ROSENTHAL, Plaintiff and Appellant, v. JER-
OME B. ROSENTHAL, Defendant and Appellant.

(Two Cases.)

Crowley & Goffin, Arthur J. Crowley and George M. Goffin for Plaintiff and Appellant.

Munger, Tolles, Hills & Olson, Munger, Tolles, Hills & Rickershauser, Christian E. Markey, Jr., and William J. Bird for Defendant and Appellant.

FLEMING, J.—Consolidated cross-appeals from an interlocutory judgment of divorce and related orders.

Ruth and Jerome Rosenthal were married in 1943 and separated in 1959. The wife brought suit for divorce on the ground of extreme cruelty, and the husband cross-complained on the same ground. The trial court granted both parties a divorce, determined the extent of the community assets and liabilities, and appointed a receiver to liquidate the community property, pay the community debts, and divide the proceeds. Both parties appeal. (See *Rosenthal* v. *Rosenthal,* 197 Cal.App.2d 289 [17 Cal.Rptr. 186].)

1. In the wife's main appeal she contends certain oil leases, contracts, and real property held in the name of the husband's law partnership should have been classified as community property. The husband was a member of the law firm of Rosenthal & Norton until January 1959, and thereafter practiced law by himself until January 1961, when he formed the partnership of Rosenthal, Cook & Green. The wife contends the oil leases, contracts, and real property were acquired by her husband while he practiced law by himself, were never transferred to the new partnership, and therefore remained community proprty. The record fails to support her contention.

The oil leases were acquired by the partnership of Rosenthal, Cook & Green from one Eckstein as the result of a fee controversy. The husband testified, "I am sure they are either in the name of the partnership or they are as yet unassigned as of record. I don't know but they didn't come through me, these leases. Q. In other words, the partnership made the arrangements with the lessors? A. With Eckstein, that is right." The testimony and the exhibits submitted to the trial court support its conclusion that the oil leases were earnings of the partnership in return for legal services and that the leases passed directly to the firm from Eckstein in the settlement of a fee controversy.

The contracts were agreements to perform legal services for various motion picture performers in return for a percentage

of their incomes. The trial court could properly infer that income under the contracts prior to 1961 was community income and income after 1961 was partnership income from contracts which had been transferred to the new partnership under a clause in the agreement providing that ". . . all other assets of Rosenthal's law practice existing at start of business on January 1, 1961, are contributed (for partnership use) by Rosenthal to partnership. . . ." The contracts for legal services were expectancies of future income for personal services and properly transferrable to the new law partnership as the entity which would perform the services under the contract.

The real property was a 2.7 percent interest in a partnership which controlled the Atlanta Cabana Motor Hotel, an interest which had been acquired by the law partnership under a fee arrangement with a client for the performance of legal services. The husband testified that this interest had been inadvertently transferred to him individually, and he had quitclaimed it to the firm in 1961. Since this interest represented payment for legal services performed by the firm, it was a partnership asset, and the husband had no specific interest in it.

The wife argues that the law firm was not a bona fide partnership, and that the transfers to the law firm were an invalid attempt to circumvent her community property interest in the oil leases, contracts, and real property. The trial court found against the wife on these contentions, and we see no reason to disturb its factual determination on this point. (*Pearson* v. *Norton,* 230 Cal.App.2d 1, 11 [40 Cal.Rptr. 634].) The wife further contends that in these matters the husband breached the fiduciary duties he owed to her under *Vai* v. *Bank of America,* 56 Cal.2d 329 [15 Cal.Rptr. 71, 364 P.2d 247]. The thrust of the *Vai* case, however, is directed at a husband who fails to disclose material facts, and thereby breaches his fiduciary duty in the management and control of the community property. (56 Cal.2d at p. 342.) There is no evidence in this case that the husband was guilty of actual or constructive fraud by failing to disclose the nature and extent of the community assets.

2. The wife claims an interest in the law partnership, contending that since community assets were transferred to the partnership she retained a community interest in her husband's share of the partnership. This is correct. ■ Although specific property is divested of its community character upon its transfer to a partnership (Corp. Code, § 15025, subd.

2(e)), the husband's interest in the partnership itself is community property, and the wife acquires a general claim in her husband's share of the partnership in place of her interest in specific community assets transferred to the partnership. To hold otherwise would allow a husband to transfer community assets to a partnership during the pendency of a divorce action in order to defeat his wife's community property rights. (*McCall* v. *McCall*, 2 Cal.App.2d 92, 94 [37 P.2d 496]; *Estate of Kane*, 80 Cal.App.2d 256, 266-267 [181 P.2d 751].) ■ When the parties are divorced and the community property is divided, the wife should be compensated for giving up her claim to the husband's share of the partnership. (*Carmichael* v. *Carmichael*, 216 Cal.App.2d 674, 682 [31 Cal. Rptr. 514].) ■ The trial court recognized the theory of her claim, but found that the law partnership had no net worth, and therefore gave the wife no credit for her community share of her husband's interest in the law partnership. Instead, the court found that the community estate should bear a liability of $25,029.24, an amount which purported to represent the husband's share of the law partnership deficit which existed on June 1, 1962. This deficit was based on the partnership tax returns for 1961 as extended by a balance sheet covering the period to May 1962. However, the deficit on the partnership tax return resulted from an item entitled "Liability for future rent payments on oil well equipment leases", an item which represented a contingent future expense. Since we have excluded expectancies of future income from the calculations of the partnership's net worth, we also exclude expectancies of future expense. Striking the item "Liability for future rent payments on oil well equipment leases" from the partnership balance sheet, we find that instead of a deficit the law partnership had an actual net worth of $13,545.01. The husband's share of the net worth of the partnership (77.28 percent) amounted to $10,467.58. The wife was entitled to half this amount, $5,233.79, and the trial court erred in not ordering that she be paid that sum to compensate her for the surrender of her community claim in the law partnership interest. (*Carmichael* v. *Carmichael*, 216 Cal. App.2d 674 [31 Cal.Rptr. 514].)

■ We do not reverse the judgment, however, for we have the power to make additional findings of fact and modify the judgment of the trial court. (Code Civ. Proc., §§ 53, 956a.) When an erroneous item has been included in an account and its correction is a simple matter of computation, it is appropri-

ate for us to make the correction so that all issues in the case may be resolved on appeal. (*Proctor* v. *Smith,* 214 Cal. 227, 230-231 [4 P.2d 773].) We therefore modify the findings of fact, the conclusions of law, and the interlocutory judgment by striking from the list of community liabilities the item entitled ''Share of law partnership deficit not to exceed $25,029.24'', and by adding to the list of community assets the item ''Share of law partnership net worth, $10,467.58''. We find and conclude that Mrs. Rosenthal is entitled to be paid forthwith half this amount, or $5,233.79, and we hereby modify the judgment of the trial court by ordering Mr. Rosenthal to pay Mrs. Rosenthal, from his earnings and independently of the receivership, the sum of $5,233.79 with interest from the date of the interlocutory judgment.

3. The wife contests the adequacy of an award of $500 a month alimony and $175 a month child support in the light of her husband's earnings from the practice of law in excess of $100,000 annually. At the time of this award the wife was living in the community home, and the husband was still pouring large amounts of cash into the community oil investments. Because of these factors we cannot say that the trial court's order was an abuse of discretion under the circumstances which then prevailed. (*Hall* v. *Hall,* 42 Cal.2d 435, 442 [267 P.2d 249].) However, once the receiver has taken possession of the community assets the wife will require other housing accommodations and the husband will be relieved of the continuing drain on his income caused by the oil investments. If at that time the wife is unable to maintain herself properly on the present award, she may apply to the trial court for a modification of the amount of alimony and child support because of a change of conditions. (Civ. Code, § 139.) An augmentation of the amount of alimony or child support may be found appropriate. In computing the earnings of the husband and his ability to pay, his investment commitments and liabilities arising out of any separate or partnership oil investments should be disregarded. Such speculation may not be permitted to diminish his overruling obligation to pay alimony and child support.

4. The husband appeals from that part of the interlocutory judgment of divorce which appointed a receiver to sell the community assets, pay the community liabilities, and divide the proceeds equally between the parties. Liquidation of the community estate was not entrusted to the husband because, although he was earning over $100,000 a year from his law

practice, he insisted on pouring large amounts of money into community oil speculations, thus draining the community estate of its assets with little chance of profit in the foreseeable future. Specifically, the trial court found that "the defendant [husband] is out of his field in trying to handle oil properties and by continuing or attempting to continue in said field, the defendant seriously and dangerously jeopardizes the community assets of the parties and his ability to pay alimony and child support; that to conserve the community assets of the parties and to guarantee the payment of community liabilities, child support and alimony, it is necessary to appoint a Receiver." The husband excepts to this finding, and contends there will be substantial long-term profits in the community oil business if he is allowed to continue its management. He argues the trial court abused its discretion by appointing a receiver when there was no evidence of fraud, concealment of assets, or failure to make any timely payments to the wife.

■ The appointment of a receiver to liquidate joint interests in property and carry out the terms of a judgment is authorized by the Code of Civil Procedure, section 564. (*Nichols* v. *Superior Court*, 1 Cal.2d 589, 597-598, 600-601 [36 P.2d 380, 95 A.L.R. 894]. See Civ. Code, § 140.) ■ If jointly-owned property is in danger of being lost or destroyed or misappropriated, the trial court may appoint a receiver to protect a party's interest in the property, and such an appointment will be upheld on appeal. (Code Civ. Proc., § 564; *Armbrust* v. *Armbrust*, 75 Cal.App.2d 272, 275 [171 P.2d 75]; *Venza* v. *Venza*, 94 Cal.App.2d 878, 883 [211 P.2d 913].)

■ Pouring money into a speculative business may empty the community estate as quickly and completely as a fraudulent concealment of assets, and the resulting effect on the wife's interest may be the same. The evidence shows that the husband has persisted in expending large sums of community money in a highly speculative oil business and that this persistence threatens to dissipate and waste the community assets. Were the management of the community estate left to the husband and were he allowed to continue the community oil speculations in the hope of future profit, the community property would remain undivided and subject to speculative risk for an indefinite period, the wife's interest would continue to be at her husband's mercy, and the wife would receive nothing unless and until the oil business under her husband's management showed a profit. We decline to give the husband such power, and deem the appointment of a receiver

an appropriate means to carry out the statutory direction that the community property of the parties be divided at the time of divorce. (Civ. Code, § 146.) Whenever financial mismanagement and the intransigence of the parties threaten to dissipate the community property before a division can take place, the trial court has discretion to appoint a receiver to protect the community estate. ▪▪▪ "On appeal from an order appointing a receiver, where there is evidence that the plaintiff has at least a probable right or interest in the property and that the property is in danger of destruction, removal, or misappropriation, the order will not be disturbed. [Citations.]" (*Associated Creditors' Agency* v. *Wong*, 216 Cal.App.2d 61, 66-67 [30 Cal.Rptr. 705].) ▪▪▪ The trial court was entitled to protect the wife's interest in the community property by the appointment of a receiver to liquidate and divide the community property.

▪▪▪ 5. The wife also appeals from an order of the trial court denying her motion for attorney's fees and costs pending appeal. (Civ. Code, § 137.3.) The trial court subsequently modified this order by granting her additional costs of $5,000 to pay for the reporter's and clerk's transcripts on appeal. She now contends the trial court should have awarded her further attorney's fees and costs, and argues that the court's failure to do so was an abuse of discretion because she needed the money, the husband had the ability to pay, the appeal was in good faith, and there were reasonable grounds for taking an appeal. (*Hunter* v. *Hunter*, 202 Cal.App.2d 84, 92-93 [20 Cal. Rptr. 730].) The husband argues, and we agree, that the trial court could reasonably have concluded that he did not have the ability to pay additional attorney's fees and costs, or that the wife did not need further assistance. The husband had already been ordered to pay his wife's attorneys $23,000 before judgment, $30,000 after judgment, $6,000 in costs, plus $5,000 additional costs. The trial court concluded that these costs were extravagant for an estate which might be insolvent. We find no abuse of discretion in the denial of further attorney's fees.

The findings of fact, conclusions of law, and the interlocutory judgment of divorce are modified by striking from the list of community liabilities the item entitled "Share of law partnership deficit not to exceed $25,029.24", and by adding to the list of community assets the item "Share of law partnership net worth, $10,467.58", and by ordering Mr. Rosenthal to pay Mrs. Rosenthal from current earnings and indepen-

dently of the receivership the sum of $5,233.79 with interest from the date of the interlocutory judgment. As so modified, the judgment is affirmed. The orders of March 1, 1963 (denying entry of judgment *nunc pro tunc*), and September 25, 1963 (denying the wife attorney's fees and costs on appeal), as modified on November 18, 1963, are affirmed. The wife is to receive costs on these appeals.

Roth, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied April 15, 1966, and the petitions of both parties for a hearing by the Supreme Court was denied May 18, 1966.