T.C. Memo. 2014-34

UNITED STATES TAX COURT

ANN S. CARRINO, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

CR TRADERS PARTNERS, LP, ANN S. CARRINO, A PARTNER OTHER
THAN THE TAX MATTERS PARTNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 27376-09, 17711-10.[1]          Filed February 25, 2014.

John M. Youngquist, for petitioner.

Jon D. Feldhammer and Rebecca S. Duewer-Grenville, for respondent.

———————————

[1] We consolidated Ann S. Carrino, docket No. 27376-09; and CR Traders Partners, LP, Ann S. Carrino, A Partner Other Than The Tax Matters Partner, docket No. 17711-10, for a decision without trial under Rule 122. (Unless we say otherwise, all references to Rules are to the Tax Court Rules of Practice and Procedure. All bare references to sections are to the Internal Revenue Code in effect at the relevant time.)

[*2]      MEMORANDUM FINDINGS OF FACT AND OPINION

HOLMES, Judge:  Ann and Vince Carrino legally separated in June 2002.  Shortly thereafter, Vince used community property to fund a partnership that operated a wildly successful hedge fund.  That partnership's original 2003 return didn't name Ann as a partner or report any distributions to her.  A few years later-- in November 2006--a state court approved the couple's agreement that 72.5% of the then-current value of Vince's investment in the partnership was community property.  In response, Vince filed an amended 2003 partnership return that identified Ann as a partner.  The Commissioner says that Ann owes tax on the income attributable to her share of the partnership in which she didn't know she was a partner.  Ann disagrees with this perplexing assertion.

FINDINGS OF FACT

In April 1990 Ann married Vince Carrino in California.  He was, and remains, an exceptionally skilled financial manager who has operated a number of volatile hedge funds.  Managing those funds between 1989 and 2003 was, according to Vince, "kind of like riding a roller coaster blindfolded and naked through a nuclear power plant; [it was] not a pleasant experience."  The stress built up, and the marriage deteriorated.  In June 2002, Vince petitioned to dissolve the

[*3] marriage. While he and Ann legally separated four days later, the divorce action dragged on for more than four years.

## I. CR Traders

Vince started a new hedge fund the same year he separated from Ann. In January 2002, he had formed a limited liability company called CR Traders, LLC (CR LLC), and named himself the managing member.[2] That entity served as general partner to a partnership that Vince (in his capacity as manager of CR LLC) created on June 6, 2002--CR Traders Partners, L.P. (CR LP). Although Vince made capital contributions to CR LLC (about $850,000) sometime in 2002--which CR LLC then contributed to CR LP--neither of those contributions occurred before he and Ann legally separated in June 2002. CR LP began operating as a hedge fund in September 2002, and Vince managed it through CR LLC. Even though they were still married (but legally separated) at the time,[3] Vince apparently made this investment without notifying Ann--much less obtaining her consent.

---

[2] Because CR LLC had two members (Vince and William Foley) and because they didn't elect to treat it as a corporation, it is classified as a partnership. See sec. 301.7701-3(b)(1)(i), Proced. & Admin. Regs.

[3] See infra Opinion section II.A for a discussion on legal separation in California.

**[\*4]** CR LP was successful from the start. CR LLC's own share in the fund earned about $4 million on an initial investment of about $850,000 during 2003 alone. (CR LLC then contributed over $9 million more in capital during 2003 and ended up with a year-end capital account of over $14 million.) According to its original 2003 partnership return, CR LP issued Schedules K-1, Partner's Share of Income, Deductions, Credits, etc., to 26 other partners; Ann, however, was not listed as one of them. Nor was she listed as a member on CR LLC's own 2003 partnership return. Ann did not report any income from either CR LLC or CR LP on her 2003 Form 1040.[4]

At some point after CR LP was up and running--the record is unclear exactly when--Ann learned of Vince's investment in CR LLC and CR LP. In the state-court dissolution proceedings, Ann asserted that all of the funds Vince used after their legal separation for that investment were community property because

---

[4] Ann filed as head of household. Even though she was still legally married under state law that year, see infra Opinion section II.A, a person legally separated from her spouse at the end of a tax year is not considered married that year for purposes of the Code in determining eligibility for head-of-household status; see sec. 2(b)(2)(B). We don't think this particular disjunction between federal tax law and state marriage law is vulnerable to challenge: Congress "can make determinations that bear on marital rights and privileges" notwithstanding state law to the contrary--so long as the effect of the federal law doesn't "restrict[] and disabl[e]" the rights of a "class of persons" that the laws of various states "have sought to protect." United States v. Windsor, 570 U.S. __, __, __, 133 S. Ct. 2675, 2690, 2692 (2013).

[*5] they were traceable to money from another hedge fund that Vince had founded and operated during their marriage--and that his investment in that earlier fund consisted entirely of community property.

Vince disagreed, and protracted litigation ensued. Finally, in November 2006, a state family court judge presided over a settlement conference between counsel for both Vince and Ann. During that conference, counsel signed a court-approved settlement agreement stating that 72.5% of Vince's current interest in CR LLC was traceable to community property, while the remaining 27.5%--traceable to Vince's performance fees--was Vince's separate property. The agreement also provided that Ann's 50% community-property share in that interest would be promptly liquidated and paid to her. Vince acted quickly, and by the end of November CR LP distributed nearly $6.5 million to Ann.[5] About another month later, on December 26, 2006, Vince and Ann's marriage ended when the Superior Court of California granted their divorce.

---

[5] That amount was based on an estimate from Vince's counsel that CR LP's value as of September 30, 2006 was about $17.5 million: $19 million, less an income-tax obligation of about $1.5 million. The following year, however, the state court determined that CR LP's September 30, 2006, value was significantly higher and in September 2007 granted Ann a judgment against Vince for an additional $1.4 million plus interest.

[*6] II.     The Amended Returns

The settlement agreement didn't settle all the remaining issues between Ann and Vince.  When the superior court granted the divorce, it also bifurcated the case to allow the family court to retain jurisdiction over the remainder of the marital-property disposition.  Vince argued that Ann needed to reimburse him for income-tax payments he had made with respect to community-property income for tax years 2003 to 2005.  Ann contended that Vince would be reimbursed as part of the overall "true up" for the property division.[6]

Vince took matters into his own hands.  On April 15, 2007, he submitted amended 2003 partnership returns for CR LP and CR LLC to the IRS.  CR LP's amended return reported for the first time that Ann was a partner, and included a K-1 that allocated to her $759,196 in "other income" and $355 in "interest expense on investment debts" for a net distributive share of $758,841.[7]  CR LP also amended the K-1 for CR LLC--it showed a corresponding decrease of $758,841 in CR LLC's distributive share compared to its original K-1.  (Vince was, in other

---

[6] These cases concern only Ann's 2003 tax year.  An August 2008 state court decision showed that the Carrinos had settled their dispute about the benefits and liabilities attributable to community income and losses for 2004 and 2005.

[7] The parties agree that if we decide Ann is responsible for half of the community income, then her share is $759,196.

[*7] words, taking the position that Ann was a partner only in CR LP--the hedge fund--and not in CR LLC, the general partner of the hedge fund--even though he had bought into CR LP in part with community property routed through CR LLC.)

Vince also had CR LLC file its own amended return for 2003. This new return did not show any additional members, but did show a decrease of $758,841

**[\*8]** in Vince's distributive share.[8] Ann didn't file a 2003 amended individual return reflecting the amounts shown on the K-1 that CR LP issued to her.

III.    The Fallout

The Commissioner took notice of that inconsistency, examined Ann's 2003 individual return, and in October 2009 sent her a notice of deficiency for that tax

---

[8] Vince filed his own amended 2003 individual return to reduce his taxable income by the same $758,841. The superior court was not pleased:

> It is clear that [Vince's] hasty and unilateral action in this regard has caused needless fees and costs. While [this] court has no jurisdiction over the IRS, it does have jurisdiction over the parties and their dealings with each other. The court agrees with [Ann] and finds [Vince's] actions with respect to their 2003 tax returns to be unnecessary and contrary to the fiduciary duties to [Ann]. As a result, he shall pay when due and indemnify and hold [Ann] free and harmless of and from all penalties, interest, fees and costs incurred by her *over and above the actual taxes (Federal and State) due on her returns as ultimately determined by the IRS and the Franchise Tax Board*. [Emphasis added.]

While Ann contends that the Commissioner--due to confidentiality rules-- has declined to reveal to her how the IRS treated Vince's claim for a refund on his 2003 amended return, we take judicial notice that the IRS disallowed it. Vince filed a Tax Court petition in August 2011 seeking redetermination of the IRS's decision to disallow his refund claim of $278,880 for 2003. Carrino v. Commissioner, T.C. Dkt. No. 18029-11 (Aug. 2, 2011). The Commissioner responded by filing a motion to dismiss for lack of jurisdiction on the ground that he had not sent Vince a notice of deficiency for that year nor made any other determination that conferred jurisdiction on us. Id. (Sept. 6, 2011). In November 2011, after Vince failed to file an objection, we granted the Commissioner's motion. Id. (T.C. Nov. 21, 2011).

**[\*9]** year.[9]  That notice said that since a 2008 state court decision finalizing a

community property split indicated that she received over $750,000 of capital gain

in 2003, she should have reported that amount on her 2003 return.[10]

Ann, a California resident, timely filed a petition contesting that notice.  She

asserts that she was not a partner in CR LP--during 2003 or at any time.  That case

got put on hold when the Commissioner began a TEFRA examination of CR LP.[11]

---

[9] Both parties recognize that the Commissioner issued this notice beyond the
normal three-year assessment period.  See sec. 6501.  Ann, however, concedes that
if the large sum of 2003 income from CR LP or CR LLC is includible in her
taxable income for that year the statute of limitations is open under section
6501(e), which gives the IRS six years after the filing of a return if a taxpayer
omits from gross income an amount greater than 25% of the amount of gross
income stated in that return.  (The Commissioner has conceded that if the income
is not attributable to her, then the statute of limitations has run.)

[10] The notice of deficiency made various other adjustments to income, but
the parties settled all of them.

[11] TEFRA is the Tax Equity and Fiscal Responsibility Act of 1982
(TEFRA), Pub. L. No. 97-248, 96 Stat. 324, one part of which governs the tax
treatment and audit procedures for most partnerships.  See TEFRA secs. 401-406,
96 Stat. at 648-670. TEFRA requires the uniform treatment of all "partnership
items"--a term defined by section 6231(a)(3) and (4)--and its general goal is to
treat all partners alike when the IRS adjusts partnership items.  The identity of the
partners in a partnership is a partnership item, when, as here, it affects the
distributive share of the other partners.  See Blonien v. Commissioner, 118 T.C.
541, 552 (2002).  As with much of TEFRA, there is much subtlety here:  A
partner's identity may not be a partnership item where there is a dispute as to
whether a person not listed as a partner on the partnership return is a partner.  See
Hang v. Commissioner, 95 T.C. 74, 82 (1990) (in context of S corporation then

(continued...)

[*10] The next year he sent Ann a Notice of Final Partnership Administrative Adjustment using the amounts shown on CR LP's 2003 amended return,[12] in which he determined that she was a partner. Ann responded with a petition in which she asked us to determine that she was not a partner in CR LP.[13] We

---

[11](...continued)
subject to TEFRA partnership procedures, holding that whether taxpayer was beneficial owner of interest was shareholder-level item); see also Grigoraci v. Commissioner, T.C. Memo. 2002-202 (whether bankrupt's estate and bankrupt were both partners was an affected item because it doesn't affect distributions to other partners).

[12] An FPAA, as a notice of final partnership administrative adjustment is abbreviated, is the TEFRA equivalent of a notice of deficiency, in that it triggers the start of the time for filing a petition with the Tax Court.

[13] She filed that petition approximately four months after the IRS issued her the FPAA. If the partnership's tax matters partner (which Ann wasn't) doesn't file a petition for readjustment of partnership items within 90 days of the FPAA's mailing, then a "notice partner" may do so within 60 days after the close of the 90-day period. See sec. 6226(b)(1); see also Barbados #6, Ltd. v. Commissioner, 85 T.C. 900, 904 (1985). Section 6231(a)(8) generally defines a notice partner as a "partner" who is "entitled to notice" under section 6223(a), which includes any partner in a partnership with 100 or fewer partners (as is the case with CR LP). And for these purposes, TEFRA provides an expanded definition of "partner". It includes "any * * * person whose income tax liability * * * is determined in whole or in part by taking into account directly or indirectly partnership items of the partnership." Sec. 6231(a)(2). Because Ann's income-tax liability is determined in part by taking into account CR LP's partnership items, she is considered a "notice partner." See Mann-Howard v. Commissioner, T.C. Memo. 1992-537, 1992 WL 220108, at *4 n.6 (noting that under TEFRA, a wife filing a joint return with her husband who is a partner in a TEFRA partnership can herself be considered a constructive partner).

[*11] consolidated the cases, and the parties submitted them for decision under Rule 122.

OPINION

I.    Parties' Arguments

The parties do not agree on the controlling question in these cases.

Ann frames it narrowly--she asserts that we must ask whether the 2006 court-ordered marital division made her a partner in CR LP in 2003. She says that means we need to first analyze the nature of her interest under California community-property law and then address how the Code determines whether someone is a partner in a partnership.

She argues that under California community-property law Vince's investment of community funds in CR LP did *not* give her a community-property interest in CR LP's assets. It gave her instead only a claim in and against Vince's partnership share in CR LLC and, through CR LLC's own partnership interest in CR LP, a claim in and against CR LP's capital and income, but only with respect to the part that was community property. From her perspective, the court-approved settlement agreement in 2006 determined what part of CR LLC's and CR LP's capital and income she was entitled to. The subsequent distributions that she received from her ex may have come from CR LP's assets but were only a

[*12] payment to her from his share of those assets--they do not take her back in time and make her a partner. To use the technical jargon of California community-property lawyers, she argues that, before the 2006 settlement, she only had an "inchoate" one-half community-property interest in the value of what Vince had invested in CR LP after their separation. The distribution she received as a result of the settlement merely cashed her out of that community-property interest.

This means, Ann says, that nothing in the Code requires us to retroactively consider her a partner in CR LP for tax purposes. Ann also appeals to common sense--how could she be a partner when CR LP didn't show her as a partner on its original 2003 return, and when she didn't even know that the partnership existed? She says that Vince filed the amended 2003 partnership return only so he could himself file an amended return for 2003 to claim that he had overpaid his taxes by overreporting the income that he received from CR LLC and CR LP.

The Commissioner asks a simpler question: Must Ann pay tax on $759,196 of the income earned by CR LP that year? And in arguing the answer should be in the affirmative, he takes a different approach. He argues that we don't need to answer the question of whether Ann was a partner in CR LP in 2003. That's because, according to the Commissioner, in 2003 Ann held at least a *present interest* in half of the income from Vince's community property share of CR LLC

[*13] (which itself received income from its partnership share in CR LP).

Whatever that interest was, it generated income on which she owes tax.

We agree with the Commissioner's approach in Ann's individual case.  In

deciding that case, we need not figure out whether Ann was a partner in CR LP--

we need to answer only the question posed in any income-tax case--is the

Commissioner's determination in the notice of deficiency correct?  Or, in Ann's

case, does she owe income tax on half of the $759,196 that is equal to stipulated

community-property income attributable to Vince's share in CR LLC?

II.     Federal Tax Law Treatment of Community Property

Section 66 deals with the treatment of community income.  Married couples

in a community-property state like California who don't file joint tax returns

"generally must report half of the total community income earned by the spouses

during the taxable year."  Sec. 1.66-1, Income Tax Regs.;[14] see also United States

v. Mitchell, 403 U.S. 190, 196-97 (1971).  With community income, like other

income, federal income-tax liability follows ownership.  Mitchell, 403 U.S. at 197.

And state law controls the ownership determination--it "'creates legal interests but

---

[14] As we discuss in more detail later, section 66 and its accompanying
regulations list some exceptions to the general rule that each spouse must report
half of the total community income.  See generally sec. 66; see also sec. 1.66-1(a),
Income Tax Regs.

**[\*14]** the federal statute determines when and how they shall be taxed.'" Id. (quoting Burnet v. Harmel, 287 U.S. 103, 110 (1932)). While the parties seem to agree on the community-property portion of income Vince's share of CR LLC earned in 2003, they dispute whether Ann had a present interest in that portion during that year. We look to California community-property law to settle that dispute.

A.     Ann and Vince Were Legally Married in 2003

We must first resolve a threshold issue of whether Ann and Vince were even married in 2003. Remember, the general rule requiring each spouse to report half of the community income applies only to *married* couples who file separately. Ann and Vince legally separated on June 21, 2002. After spouses legally separate, "the earnings or accumulations of each party are the separate property of the party acquiring the earnings or accumulations." Cal. Fam. Code sec. 772 (West 2004). But does legal separation end the marriage? The Commissioner contends the marriage didn't end until December 26, 2006, when the superior court granted their divorce. Ann argues--without a corresponding citation--that under "California family law" "the marriage effectively ended on the date of legal separation."

**[\*15]**  We side with the Commissioner.  Legal separation does not end the marriage.  See Monroe v. Superior Court of Los Angeles County, 170 P.2d 473, 473 (Cal. 1946) ("A separate maintenance decree does not end the marriage[.]"); Estate of Lahey v. Bianchi, 91 Cal. Rptr. 2d 30, 32 (Ct. App. 1999) (noting legal separation formerly known as decree of special maintenance); Jacquemart v. Jacquemart, 269 P.2d 951, 952 (Cal. Ct. App. 1954) ("A decree of separate maintenance does not end the marriage[.]").  We therefore hold that Ann and Vince were still legally married until late December 2006.  And, because Ann and Vince filed separately, the general rule that each spouse must report half of the community income is in play here.

B.     2003 Community Income in CR LP

Now we turn to whether Ann had a present interest in the community-property portion of income Vince earned as a member of CR LLC in 2003.

It's well-established under California community-property law that the "character of property as separate or community is determined at the time of its acquisition."  See v. See, 415 P.2d 776, 779 (Cal. 1966).  In other words, once property is community property, it is "'stamped a community asset from then on'" unless the parties agree otherwise or its character is changed in some other way recognized by law.  In re Marriage of Rossin, 91 Cal. Rptr. 3d 427, 432 (Ct. App.

**[*16]** 2009) (quoting In re Marriage of Lehman, 955 P.2d, 451, 459 (Cal. 1998)).

Thus, it's "irrelevant" *when an individual actually receives* the stream of income

from that community asset; rather, the "critical question is *when the right to that*

*stream of income accrued.*" Id. at 435 (emphases added). And even if one spouse

invests community property in a partnership with a nonspouse, the property

invested remains community property. See McCall v. McCall, 37 P.2d 496, 497

(Cal. Ct. App. 1934). The "interest in a partnership is not a new kind of property,

but takes its character, as separate or community property, in accordance with how

and when it was acquired." Id. Thus it doesn't matter that Vince (through CR

LLC) funded CR LP after he legally separated from Ann; what's important is that

he funded that interest with community property. And the fact that he invested it

in a partnership with a third party doesn't change the characterization.

Ann doesn't seem to dispute that there was a community-property portion of

income earned in 2003 from CR LP via Vince's interest in CR LLC. However,

she characterizes her right in this income in 2003 as an "inchoate right." Citing

Black's Law Dictionary, she notes that such a right is one that "has not fully

developed, matured, or vested." And she argues that this was "precisely the

California family law right" she had "until it was determined in November 2006

**[*17]** what amount of community property * * * was contributed to CR LP."
Thus, Ann contends, she had no right to CR LP income in 2003 that could be determined and subject her to tax that year.

We disagree. Her interest was not "inchoate" in 2003. California law tells us that, far from being inchoate, each spouse's interest "in community property during continuance of the marriage relation" is "present, existing, and equal." Cal. Fam. Code sec. 751 (West 2001). In other words, a community-property interest in a spouse's partnership interest is "more than a mere money claim;" it's a "present interest." Kenworthy v. Hadden, 151 Cal. Rptr. 169, 170, 172 (Ct. App. 1978).

The dispute in Kenworthy was also over the nature of a wife's community-property interest in her husband's partnership. As in this case, Mr. Kenworthy had used community property to fund a partnership. Mrs. Kenworthy then died, and in her will she left her community property to various devisees. Id. at 170. Mr. Kenworthy began to pay them their shares of the profits from the partnership. Id. at 170-171. Those payments ended when Mr. Kenworthy died, and Mrs. Kenworthy's devisees never filed a claim against his estate for their shares of the partnership property. Id. at 171. The time for creditors to file claims against Mr. Kenworthy's estate then passed, but Mrs. Kenworthy's devisees sued on a theory

**[\*18]** that her will had given them an actual property interest in Mr. Kenworthy's partnership, and not just a claim to a share of its income. The California Court of Appeal agreed. The court first held that the wife's interest in her husband's partnership was not merely an "expectant" one but a "present and existing" one. Id. at 172. "When [the] community property was transferred to the partnership [the wife] did not divest herself of her community interest in that property in favor of a general money claim against [the husband]; she merely traded her community interest in one asset for a community interest in another asset, [the husband's] partnership interest." Id. And because the devisees took "a present existing interest" to one-half of the husband's partnership interest under the terms of the wife's will, they were owners of that one-half interest. Id. at 173. Although *their* interest was not community property, they had a "claim to a present interest in the partnership and not a general claim against the estate." Id. Thus, because they owned a one-half interest in the husband's partnership interest, the court held that they didn't need to present a creditor's claim and so were not time-barred. Id. at 173-74.

We think the situation here is very similar. When Vince invested the community property in CR LP, Ann did not divest herself of her community interest in that property in favor of a money claim against him any more than the

**[\*19]** wife did in <u>Kenworthy</u>. She merely traded her community interest in one asset for a community interest in another asset, i.e., Vince's membership share of CR LLC's partnership interest in CR LP. <u>Kenworthy</u>, 151 Cal. Rptr. at 172. We are not saying that Ann's community-property interest made her part owner of CR LP's assets, but we do hold that her interest--an interest in Vince's membership share of CR LLC's partnership interest in CR LP--was a present interest and not a mere expectancy. See <u>id.</u>

We acknowledge that those principles from <u>Kenworthy</u> may be in tension with earlier California caselaw. <u>Rosenthal v. Rosenthal</u>, 50 Cal. Rptr. 385 (Ct. App. 1966), for example, was a dispute over a husband's law partnership--a partnership he had begun during his marriage. The wife claimed a community interest in that partnership, because the husband had funded it with community assets. <u>Id.</u> at 387. The trial court adopted that theory, and the California Court of Appeal agreed. <u>Id.</u> at 387-88. Its explanation is less than clear, however, at least to nonspecialists. It said that "[a]lthough specific property is *divested of its community character* upon its transfer to a partnership * * *, the husband's interest in the partnership itself is community property."[15] <u>Id.</u> at 388-89

---

[15] Ann argues that <u>Kenworthy</u> also stood for the proposition that "specific property is divested of its community character upon its transfer to a partnership."

(continued...)

**[*20]** (emphasis added) (citing Cal. Corp. Code sec. 15025). Thus, the court explained, "the wife acquires a *general claim in her husband's share of the partnership* in place of her interest in specific community assets transferred to the partnership." Id. at 388 (emphasis added). In other words, when "parties are divorced and the community property is divided, the wife should be compensated for *giving up her claim* to the husband's share of the partnership." Id. (emphasis added) (citing Carmichael v. Carmichael, 216 Cal. App. 2d 674, 682 (Ct. App. 1963)).[16] "To hold otherwise," the court said, "would allow a husband to transfer community assets to a partnership during the pendency of a divorce action in order to defeat his wife's community property rights." Id.

We note here that Kenworthy agrees with Rosenthal's result--both cases protect a wife against her husband's claim that she had no interest in partnership property that was traceable to community funds, see Kenworthy, 151 Cal. Rptr. at

---

[15](...continued)
(This statement, however, was from a dissent.) Kenworthy v. Hadden, 151 Cal. Rptr. 169, 173 (Ct. App. 1978) (Evans, J., dissenting).

[16] Carmichael did not in fact characterize one spouse's community-property interest in the other spouse's partnership interest as a general claim; rather, it held only that "a wife should be able to receive as community property a sum representing a portion of her husband's partnership interest without an accounting." Carmichael v. Carmichael, 216 Cal. App. 2d 674, 682 (Ct. App. 1963).

**[*21]** 173, but it carefully distinguished many of the propositions <u>Rosenthal</u> used to reach that result. It first reread California Corporation Code section 15025--the only authority cited in <u>Rosenthal</u> to support its statement that community property is divested of its character upon transfer to a partnership. That code section, <u>Kenworthy</u> explained, only "clarifies the character of partnership property as between the partners, it does not attempt to characterize the nature of the partnership interest of a partner as between a husband and his wife. As to them, the husband's interest in the partnership is still community property despite [Cal. Corp. Code sec.] 15025." <u>Id.</u> at 172 (citing <u>McCall v. McCall</u>, 2 Cal. App. 2d 92 (Ct. App. 1978)). <u>Kenworthy</u> also limited <u>Rosenthal</u>'s characterization of a wife's community-property interest in her spouse's partnership interest as only a general claim. <u>Kenworthy</u> explained that a "court of dissolution"--like the trial court in <u>Rosenthal</u>--"has broad powers to divide assets; accordingly, in that context, there is no objection to *an inexact description of wife's interest as a general claim*." <u>Id.</u> at 173 (emphasis added). But since a probate court--like the trial court in <u>Kenworthy</u>--did not have broad discretion to divide assets, its description of the wife's community-property interest had to be very precise.[17] See <u>id.</u>

---

[17] We recognize that <u>Kenworthy</u> appears to distinguish <u>Rosenthal</u> on the grounds that <u>Kenworthy</u> was a probate case while <u>Rosenthal</u> was a dissolution

(continued...)

**[*22]** Here, as in <u>Kenworthy</u>, we must be extra precise in describing what property rights Ann had in 2003. And following <u>Kenworthy</u>,[18] we conclude that Ann had a present and existing community-property interest in 72.5% of Vince's interest in CR LP--which he held in the form of a membership interest in CR LLC. The court-approved settlement agreement in 2006 *recognized* that interest; it didn't *create* that interest.[19] Therefore--regardless of whether Ann was a partner in CR LP (or a member in CR LLC) in 2003--we conclude that the general rule of federal

_____

[17](...continued)
case. See <u>Kenworthy</u>, 151 Cal. Rptr. at 172-73. But <u>Kenworthy</u> emphasizes that distinction only to highlight the relative importance of the precision each of the two courts needed to do their jobs.

[18] Ann argues in her reply brief that both <u>Kenworthy</u> and <u>Rosenthal</u> are distinguishable because those cases involved viable partnerships that existed during a marriage. Since Ann argues that her marriage with Vince "effectively" ended upon legal separation, <u>see</u> <u>supra</u> Opinion section II.A, she contends that the partnership here was not funded--and thus was not in existence--until after the marriage ended. We've already found, however, that Vince funded the partnership while he and Ann were still legally married.

[19] At times, Ann appears to argue that since Vince funded CR LP after their separation began, she somehow lost a present interest in the money until the property settlement in 2006. That would ignore the fact that Vince used *community* property to fund CR LP in 2002. And the use of those funds to invest in CR LP (through CR LLC) didn't divest Ann of her interest in the community property after 2002--she just traded her community interest in one asset for a community interest in Vince's interest in CR LP (through CR LLC) each time Vince made an investment in that partnership. See <u>Kenworthy</u>, 151 Cal. Rptr. at 172. She never lost a present interest in the community-property funds.

[*23] income-tax law--that a married person filing separately must report half of the community income--applies in her case to the income that CR LLC earned. See sec. 1.66-1, Income Tax Regs.[20]

We conclude by noting credible arguments that might've been relevant to our analysis but that we don't consider because the parties failed to make them. See, e.g., Efron v. Commissioner, T.C. Memo. 2012-338, at *9 n.6, *18 n. 9.

First, we note the Commissioner does not mention section 1.702-1(d) of the regulations. (Section 702 and its accompanying regulations provide rules to determine the income-tax liability of a partner for his distributive share of a partnership's income.) That regulation states that if a husband and wife in a community-property state file separate returns, and only one spouse is a member

---

[20] We are left with the vexing question of what to do with Ann's TEFRA case. There is no caselaw on whether this lack of effect at the partner level means the TEFRA case is somehow moot. We do have jurisdiction to decide it, see note 11 *supra,* and the FPAA *does* determine that "a change in ownership" occurred in 2003 that made Ann a partner that year. We think this means that that determination might have consequences for later years (and for other partners of CR LP for 2003, if that year is somehow open for any of them other than Ann). We therefore find that this part of the Commissioner's determination is not moot, but that it is wrong because Ann's interest in CR LP was not that of a partner, but of a holder of a community-property interest in Vince's partnership. We thus rule in Ann's favor in the partnership case. We do note, however, that the parties did not brief this possible consequence of their respective positions; they should feel especially free to move for reconsideration if they care to direct their attention to it and disagree with us.

**[*24]** of a partnership, the part of his distributive share of income "which is derived from community property, should be reported by the husband and wife in equal proportions." Sec. 1.702-1(d), Income Tax Regs.

We also note Ann's failure to argue for innocent-spouse relief. As we mentioned earlier, <u>see</u> <u>supra</u> note 14, section 66 and its accompanying regulations list a couple exceptions to the general rule that each spouse must report half of the total community income. But these require proof of four conditions, <u>see</u> sec. 66(c)(1)-(4), or arguments about all the facts and circumstances, <u>see</u> sec. 66(c)(4); sec. 1.66-4(b), Income Tax Regs. Because Ann didn't argue that she fell within

[*25] either of these exceptions, we deem this issue waived.  See, e.g., <u>Welle v.</u>

<u>Commissioner</u>, 140 T.C. ___, ___ (slip op. at 4 n.3) (June 27, 2013).[21]

> <u>Decision will be entered</u>
>
> <u>under Rule 155 in docket</u>
>
> <u>No. 27376-09</u>.
>
> <u>Decision will be entered</u>
>
> <u>for petitioner in docket</u>
>
> <u>No. 17711-10</u>.

---

[21] Another one of those exceptions lies within the discretion of the Commissioner.  Section 66(b) authorizes him to disallow the benefits of any community-property law to a taxpayer with respect to any income if (1) the taxpayer acted as if he were solely entitled to such income, and (2) the taxpayer failed to notify the taxpayer's spouse of the nature and amount of such income before the due date for filing the return for the tax year in which the income was derived.  See <u>Shea v. Commissioner</u>, 112 T.C. 183, 190 (1999).  The Commissioner, however, didn't invoke that subsection here to apply all of the income to Vince**.**